FINCH et al, Appellants, v. ENKE et al, Respondents.

(222 N. W. 657.)

(File No. 6472. Opinion filed January 5, 1929.)

*E. A. Berke*, of Brookings, for Appellants.

*J. N. Johnson*, of Canby, Minn., for Respondents.

MISER, C. This appeal is from an order sustaining a demurrer to appellant's complaint. In the complaint it is alleged that defendant Enke made a contract with the state of South Dakota for the building of highway No. 15, and agreed therein the pay "all just claims for materials, supplies, and labor, and all other just claims incurred by him or any of his subcontractors, in carrying out the provisions of this contract," and further agreed that the contract bond should be held to cover all such claims. The contract bond furnished therewith was executed by respondent Federal Surety Company, as surety. Among the conditions of such bond was one that the principal therein should "pay or cause to be paid the wages stipulated and agreed to be paid each and every laborer employed by the principal, his agent, or subcontractor, and all claims incurred for materials, supplies, tools, and appliances, in carrying out the provisions of said contract." Thereafter defendant Hammond, as a subcontractor of defendant Enke, did the road work described on the contract. While Hammond was doing the work, appellants sold and delivered to Hammond food, groceries, and necessities of life, which were consumed and used by him in feeding the men who worked on the road project. The complaint alleges eight causes of action. The first, second, third, and fourth were based upon claims for meat, groceries, and necessities of life. The sixth was based upon a check given by Hammond

for labor. The seventh and eighth were based upon checks given by him for groceries. The firth cause of action was based upon a claim for bolts, blades, and other material that went into the construction of the road; but the demurrer thereto was overruled.

Two questions are therefore presented by this appeal: First, are the provisions of the contract and bond broad enough to include the groceries, meats, etc., furnished to the subcontractor? Second, do the provisions of the contract and bond and the indorsement and delivery by the payees of checks for labor and groceries used as aforesaid, and which checks have been dishonored, give to the indorsee and holder thereof a cause of action against the surety for the debts incurred by the contractor for such labor and groceries?

■ Many courts, including the United States Supreme Court, hold that groceries, provisions, supplies, etc., furnished a contractor for public work, and *necessarily used* and consumed by the men during the progress of the work, are materials within the meaning of a statutory bond conditioned for the payment of all labor or materials used in the performance of the contract. 46 A. L. R. 512. A leading case taking that view is Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776. In that case, the bond was such as required by 28 Stat. 278 (40 USCA § 270), and bound the contractor "to 'make full payment to all persons supplying him with *labor* or *materials* in the prosecution of the work provided for in' the contract." In the case at bar, it is not alleged that it was absolutely necessary for the sub-contractor to furnish board to the men. However, the language of the bond in the case at bar differs from that of the bond in the Brogan Case. As pointed out by this court in March v. Butler (S. D.), 220 N. W. 461, "supplies" is a broader and more comprehensive term than "materials." On that point, this court cited the case of Bricker v. Rollins, 178 Cal. 347, 173 P. 592. In the California case, it does not appear that the furnishing of board by the contractor was indispensable to the performance of the work, as it was in the Brogan Case; but, in the California case, as in the case at bar, the language of the bond was much more comprehensive than the language of the bond in the Brogan Case and of 28 Stat. 278, requiring the bond. Furthermore, as stated in Franzen v. Southern Surety Co., 35 Wyo. 15, 246 P. 30, 46 A. L.

R. 496, the fundamental question to be determined is whether, when the surety executed the bond, the payment of claims for groceries could reasonably be regarded as within the contemplation of the parties.

In the case last cited, the Wyoming court said: "We think, in short, that where labor or material furnished is necessary *or even proper,* for the execution of any particular work, under a contract like that in the case at bar, and the furnishing of such labor and material may be fairly held to have been in contemplation of the parties when executing the contract and the bond therefor, and the same is of a nature so as to be necessarily wholly consumed in the particular work, then it is protected under a contract and bond therefor, and the same is of a nature so as to be necessarily wholly consumed in the particular work, then it is protected under a contract and bond like those in the case at bar."

In the annotation thereto, 46 A. L. R. 511, it is stated that the question whether such item contributes to, and *is necessary in,* the completion of the work, and is used or consumed in the prosecution thereof, is generally decisive on the question of liability on a contractor's bond; but it is also stated therein that that criterion is not always to be applied to the exclusion of other considerations bearing on the question of whether the item can be reasonably regarded as within the contemplation of the parties. The complaint in the case at bar fairly alleges that the groceries furnished contributed to the completion of the work and were used and wholly consumed in the prosecution thereof; and, while it is not alleged that they were necessary to the completion of the work, their use to feed the men doing the work was a proper use. The manifest purpose of such a bond and the beneficial object of the state in requiring such bonds are to afford to laborers and those who furnish materials and supplies a measure of security for their contributions to the public improvement. However differently other courts may construe other bonds in the light of different conditions, we are of the opinion that one who, in 1924, became surety for the performance of a contract for building a state trunk highway in South Dakota may fairly and reasonably be held to have contemplated that groceries, meats, and provisions would be furnished to the contractor's road camp and consumed by the men in doing the work, and that claims therefor would be incurred by the contractor

and his subcontractors in carrying out the provisions of the contract. We are of the opinion that a surety otherwise liable should not escape liability merely because—for aught that appears to the contrary—the highway might have been built without the contractor himself feeding the men. We therefore conclude that the failure to allege the indispensable necessity on the part of the subcontractor to board his men did not render the first four causes of action demurrable.

In considering the second question presented by this appeal, it is well to observe that we are not considering whether the assignment of a check is an assignment of the fund on which it is drawn. Although these checks were negotiable instruments and indorsed as such, the question is not to be answered by a mere resort to section 1891, R. C. 1919. Parker, J., in his dissenting opinion to National Market Co. v. Maryland Casualty Co., 100 Wash. 377, 174 P. 481, 1 A. L. R. 450, states the question thus: "To my mind the problem simply reduces itself to this: What are the rights of the laborers as against the * * * surety upon the bond, and does appellant stand in the shoes of the laborers?" In answering the foregoing question, he said: "That the laborers, even after receiving their checks, retained all their rights as against the surety, of course, is plain, because the checks, until they should be actually paid, * * * would not pay the laborers' claims. I think it follows that, when the laborers transferred their checks to appellant, it then stood in the shoes of the laborers as to all their rights against the contractor and the surety."

In Goldman v. Murray, 164 Cal. 419, 129 P. 462, cited in National Market Co. v. Maryland Casualty Co., supra, notes not valid as negotiable instruments were given by a corporation in payment of a debt due the payee; the notes, believed to be valid by the payee, were assigned by indorsement and delivery only, and were given to and received by the indorsee in payment of the indorser's indebtedness to the indorsee. The court held that the assignments of the notes, so far as the indorser and the indorsee were concerned, carried with them the original indebtedness and made of the indorsee an assignee of the debt. In so holding, it said that the intent of the parties, on the one hand to assign, on the other hand to accept the assignment, was clearly evidenced by the transaction, and, while the notes were not valid as negotiable instru-

ments, as indorsed, they still had validity as evidencing the contract between the indorser and indorsee, which contract amounted to a valid equitable assignment.

In the annotation to National Market Co. v. Maryland Casualty Co., supra, 1 A. L. R. 455, it is stated that, apart from that case, there is very little authority as to the effect of the transfer of a bank check upon the original claim or upon rights arising out of the transaction in which the check was given. The case of Leach v. Hill, 106 Iowa, 171, 76 N. W. 667, is cited therein and analyzed thus: "In answer to the argument that the action in this case was upon the check alone, it is stated that the action, as to the one who had guaranteed the payment of the check, was not upon the check alone, but upon his contract of guaranty, which inured to the benefit of the payee of the check."

The case last cited was followed in Midwest Nat. Bank v. Niles & W. S. Bank, 190 Iowa, 752, 180 N. W. 885. The Washington court, in Burke v. Wilson, 107 Wash. 459, 181 P. 905, later said that it has become settled law that, " 'In the absence of any provision to the contrary, the unqualified assignment of a chose in action vests in the assignee an equitable title to all such securities and rights as are incidental to the subject-matter of the assignment.' 2 R. C. L. p. 633."

In the case at bar, the suit is not upon the checks alone, which were given for labor and groceries properly used in the furtherance of the work. Respondent agreed in the bond that the principal therein and his subcontractors would pay every laborer and all claims incurred for supplies in carrying out the provisions of said contract. Respondent is confronted by its contract as surety for the payment of such claims. When appellants became indorsees of such checks, they became assignees of a valid, equitable assignment from the payees of such checks; this equitable assignment transferred to appellants the rights of the payees to have their claims paid, if need be, by respondent, who had guaranteed their payment.

For these reasons, the order sustaining the demurrer to the first four and last three causes of action should be and is reversed.

BURCH, P. J., and POLLEY, SHERWOOD, and BROWN, JJ., concur.

CAMPBELL, J. (dissenting). I think the trial court was right in sustaining the demurrer, for the reason that the complaint utterly fails to allege that the items furnished were reasonably necessary under the particular circumstances for the carrying out of the provisions of the contract. I think this requirement is recognized both in Anderson Lumber Co. v. National Surety Co., 49 S. D. 235, 207 N. W. 53, and in March v. Butler, 53 S. D. 170, 220 N. W. 461. I believe, therefore, that the order should be affirmed.