**MARTIN–GLOVER CO. et al. v. MAYS et al.**
No. 7454.

Circuit Court of Appeals, Fifth Circuit.
Dec. 11, 1934.

Lloyd Kerr, of San Angelo, Tex., for appellants.

E. S. Cummings, of Abilene, Tex., and I. J. Curtsinger and Clif Tupper, Jr., both of San Angelo, Tex., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

This appeal is from a judgment of the District Court which confirmed that of the Referee disallowing as secured a part of a claim filed against the bankrupt estate of Thomson & Simpson by Martin-Glover Company as assignee of A. W. Thomson. It falls under 11 USCA § 48 and opens up both questions of law and of fact. We must therefore look to the evidence rather than the findings made below. It appears that Thomson & Simpson were contractors to build certain highways for the state of Texas. They arranged with A. W. Thomson, not a member of the firm, to conduct a grocery store on the job in order to furnish groceries to the laborers; the plan customarily followed and to be followed in this instance being that the contractors would advise Thomson the names of the laborers working, who were to be paid off every two weeks, and Thomson would sell such supplies or advance such money to each laborer as he and the laborer might agree upon, and Thomson would every two weeks advise the contractors the sum advanced to each laborer, which would be deducted from his wages and be put to the credit of A. W. Thomson, who would be paid when the highway department should pay installments on the contract price. This plan of operation was known to and understood by the laborers, who accepted the balance of wages due after the deductions were made. The contractors were short of capital and thus escaped having to pay full cash for wages each two weeks, being able to carry the deductions till the state should pay them. The laborers got what they needed without having to wait on the contractor and the state for cash. Thomson made a profit on his groceries and on the cash which he advanced the laborers. The contractors did not know what articles the laborers got from Thomson and had no interest in his business. If he advanced more than the laborer had coming to him as wages it was no affair of the contractors. Thomson looked for payment of the allowed deductions not to the laborers but to the contractors. There were no express agreements about assignment of or subrogation to the laborers' liens, but on one occasion Thomson had successfully asserted such lien. When the bankruptcy occurred allowed pay-roll deductions aggregating $5,491.24 were due Thomson as shown both by his and the bankrupts' books. Thomson having assigned his claim to Martin-Glover Company, whom he owed, they gave the state proper notice to retain the unpaid balance due the contractors to mature the laborers' liens against that balance as provided by articles 5472a and 5472b, Vernon's Ann. Civ. St. Tex. The state paid the fund over to the trustee in bankruptcy subject to the liens asserted against it. Martin-Glover Company claim through Thomson to be the equitable assignees of the laborers' liens. The trustee claims there is only an open account against the bankrupt contractors for groceries and money furnished the laborers at the contractors' request.

It is not denied that if the items of this account were still owing to the several laborers by the contractors there would be a valid lien on the fund under articles 5472a and 5472b on their giving notice to the proper state officer before he paid over the money; nor is it contested that the laborers· liens may be assigned. If assigned before having been matured by notice, while there is conflict in the authorities, we think the better view is that the assignee may give the notice and perfect the lien, as Martin-Glover Company did. Southern Surety Co. v. First State Bank (Tex. Civ. App.) 54 S.W. (2d) 888, 890. A Texas Court of Appeals there said: "Under our blended system a

very liberal policy is recognized in the assignment of both legal and equitable rights. If a laborer can perfect his lien and assign it with his claim, we know of no reason why he should not be permitted to assign his right to perfect his lien along with his debt."

The question accordingly is whether when Thomson made advances to a laborer against the wages due him he was purchasing pro tanto the laborer's claim for wages, or was paying it off at the instance and request of Thomson & Simpson. If the former, Thomson acquired all the rights of the laborer against the contractors and against the funds to be paid to them. If the latter, he has only an open account debt. Although there was no express agreement to assign, the evidence shows an intent that Thomson dealing with the laborer in each transaction should acquire his right against the contractors rather than that dealing for the contractors he should discharge their obligation to the laborer. One of the contractors testifies touching this job: "He (Thomson) did not have any contract with Thomson & Simpson. He did not so far as I know undertake to pay the men in groceries the amount Thomson & Simpson owed them; that would be compelling an employee to trade at his store. I never did do that." The bookkeeper (apparently) of the contractors said: "A. W. Thomson sold groceries to the men that he charged against their time, then turned their accounts in to Thomson & Simpson and they were put on the payrolls as a deduction. Those deductions were credited to A. W. Thomson at that time, the same amounts. The employees were using their credit in the store against their time. * * * I don't remember any agreement that the groceries were to be charged to Thomson & Simpson. * * * Thomson & Simpson paid A. W. Thomson out of the payroll deductions they made on the men. * * * We credited under a general heading everything he turned in—sometimes he paid doctor's bills for them—and got credit without reference to what it was for. It was itemized as to job and men. * * * I paid no attention to whether it was for groceries, doctors' bills, tires, gasoline, oil or money A. W. Thomson let him have. The only thing involved in the payroll deductions was the amount of the employee's wages involved. The amount I have

set up to his credit was charged through to the Barnhart job as a labor item." This evidence does not show that Thomson was paying off laborers for Thomson & Simpson, but that he was acquiring the laborers' claims against them, which item by item they were transferring on their books from the credit of the laborers to the credit of Thomson, carrying them still as a labor item. The laborers were cognizant of what was being done and parties to it. If this were not true, there could be no equitable assignment raised. Texas & St. L. R. R. Co. v. McCaughey, 62 Tex. 271. But an equitable assignment was held to arise from facts thus stated: "It appears that it was the understanding between the Company, the laborers and the boarding-house keepers that the Company should retain a sufficient amount to pay their board, and that the wages so retained should be paid to keepers of the boarding-house in discharge of the board. In contemplation of law the transaction is the same as if the laborers after the wages were due had in settlement of their board given orders upon the Company for an amount sufficient to pay it and the Company had accepted them. In equity at least it is a valid assignment of the debts due for wages." A similar arrangement as to groceries was likewise held to be an equitable assignment which carried priority. McIlhenny v. Binz, 80 Tex. 1, 13 S. W. 655, 26 Am. St. Rep. 705. Facts indistinguishable from the case at bar were held to create an equitable assignment of wages in Hess & Skinner Eng. Co. v. Turney (Tex. Civ. App.) 207 S. W. 171. On the authority of these decisions we hold that Thomson stood in the shoes of the laborers. The formal written assignment of his rights to Martin-Glover Company is not contested.

The trustee made objection that the claim was not itemized. Since the transaction with each laborer was separate, and each laborer's lien is sought to be enforced on its own merits, the objection was well taken; but the proof of claim refers to the bankrupts' own pay rolls for details, and the objection does not seem to have been pressed.

The judgment is reversed, with direction to allow the items herein dealt with as claims having the statutory lien on the fund in the trustee's hands.