J.W.D., INC., the Money Store, Inc. and Crestview Minimax Food Mart, Inc., Appellants,

v.

FEDERAL INSURANCE COMPANY and Austin Paving Company, Appellees.

No. 3–90–131–CV.

Court of Appeals of Texas, Austin.

March 20, 1991.

---

Steven E. Hein, McKeeman, Tuttle & Hein, Austin, for appellants.

Charles E. Hardy, Dallas, for appellees.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

JONES, Justice.

This appeal presents the question of whether or not the indorsee of wage checks paid to laborers on a public construction project may, after the checks are dishonored, recover on the general contractor's payment bond. J.W.D., Inc., The Money Store, Inc., and Crestview Minimax Food Mart, Inc. ("the stores") are three small businesses that cashed payroll checks for laborers working on a nearby public construction project. When the checks were returned for insufficient funds, the stores brought suit to recover on the payment bond for the project. Defendants below were the general contractor, Austin Paving Company, and the bonding company, Federal Insurance Company (collectively, "the bonding company"), both of which were obligors on the payment bond. The stores and the bonding company both filed motions for summary judgment. The trial court granted the motion of the bonding company and denied that of the stores, rendering a take-nothing summary judgment. The stores appeal, asserting that the trial court erred in granting the bonding company's motion and in denying their own. We will reverse and render.

The facts are largely undisputed. In 1986 Austin Paving Company contracted with the State of Texas to widen and resurface a portion of Interstate Highway 35 in Travis County. As required by the McGregor Act, Tex.Rev.Civ.Stat.Ann. art. 5160 (1987), Austin Paving provided the State with a payment bond for the protection of all claimants supplying labor and materials to the project. Austin Paving was the principal on the bond, and Federal was the insurer. Austin Paving subcontracted a portion of the work to S & M Constructors, Inc. S & M tendered checks, as payment for wages, to its laborers who were working on the project. The stores cashed many of these checks for the laborers. In mid–1987 a dispute arose between S & M and Austin Paving, ultimately resulting in S & M's inability to cover a large number of payroll checks already issued to its laborers. The stores cashed forty-two of these checks, totalling $11,576.27, that were later returned by the bank due to

insufficient funds in S & M's account. Each check had been indorsed and delivered to the stores by the proper payee.

The stores duly notified the bonding company of their claims under the payment bond. When reimbursement was not forthcoming, the stores filed this suit to recover on the bond. The bonding company sought summary judgment on the ground that the stores, by merely cashing the laborers' wage checks, had not become assignees of the laborers' rights under the McGregor Act. By cross-motion, the stores filed their own motion for summary judgment on the ground that the cashing of the checks made them "equitable assignees" of such rights. The trial court granted the bonding company's motion and rendered a take-nothing summary judgment against the stores.

■ Section 3.802(a) of the Texas Uniform Commercial Code, Tex.Bus. & Com. Code Ann. §§ 1.01–11.108 (1968 & Supp. 1991) (hereinafter, "U.C.C."), provides:

Unless otherwise agreed where an instrument is taken for an underlying obligation

\* \* \* \* \* \*

(2) ... the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. *If the instrument is dishonored action may be maintained on either the instrument or the obligation.*

U.C.C. § 3.802(a) (1968) (emphasis added). The official comment to section 3.802 makes it clear that any *holder,* not limited to the payee, of such an instrument is entitled to maintain an action on the underlying obligation: "On dishonor of the instrument the holder is given his option to sue either on the instrument or on the underlying obligation." U.C.C. § 3.802 comment 3.

In the present case, the laborers took the checks, all payable to order, in satisfaction of S & M's underlying obligation to pay them wages. Accordingly, that obligation was not extinguished, but only suspended, pending payment of the checks. When the laborers indorsed and delivered the checks

to the stores, the stores became holders of those instruments. U.C.C. §§ 3.202, 1.201(20). When the checks were dishonored, the stores, as holders thereof, were entitled to bring an action on S & M's underlying obligation to pay wages. U.C.C. § 3.802(a). In effect, the laborers' right to receive wages from S & M had been assigned to the stores.

■ The foregoing conclusion narrows the question in the present case to the following: When the laborers assigned the stores their right to receive wages, was the laborers' right to make a claim for unpaid wages against the contractor's payment bond also assigned to the stores? We hold that it was.

The McGregor Act was enacted to protect laborers and materialmen who work on or supply materials for the construction of public improvements. *United Benefit Fire Ins. Co. v. Metropolitan Plumbing Co.,* 363 S.W.2d 843, 845–46 (Tex.Civ.App.1962, no writ); *Allis–Chalmers Mfg. Co. v. Curtis Elec. Co.,* 259 S.W.2d 918, 921 (Tex.Civ. App.1953), rev'd in part on other grounds, 153 Tex. 118, 264 S.W.2d 700 (1954). As a practical matter, the payment bond mandated by the Act is a form of "security," guaranteeing that laborers and materialmen will be paid. The issue in the present case is whether the right to make a claim on that security was impliedly or "equitably" assigned to the stores when the underlying obligation to pay wages was assigned.

The following statement summarizes the general rule regarding the passage of a security with the assignment of the debt to which the security applies:

The assignment of a debt ordinarily carries with it all liens and every remedy or security that is incidental to the subject matter of the assignment and that could have been used, or made available, by the assignor as a means of indemnity or payment, even though they are not specifically named in the instrument of assignment, and even though the assignee at the time was ignorant of their existence.

6 Am.Jur.2d *Assignments* § 121, at 302–03 (1963) (footnotes omitted); *see also* 6A C.J.S. *Assignments* §§ 76, 77 (1975); 4 Corbin on Contracts § 907, at 633–36 (1951); RESTATEMENT (SECOND) OF CONTRACTS § 340(2) and comment b (1981). The Texas cases exemplifying this rule most clearly have been those in which a mortgage on real estate was said to "follow" the promissory note it secured. *See West v. First Baptist Church*, 71 S.W.2d 1090, 1099 (Tex.1934); *Pope v. Beauchamp*, 219 S.W. 447, 449 (Tex.1920) ("The executed contract of mortgage ... is an incident of the instrument assured; and if that is negotiable and is transferred according to the law merchant, the mortgage passes with it, ipso facto, without assignment in words...."); *Perkins v. Sterne*, 23 Tex. 561, 563 (1859) ("Even in the case of a note made payable to A., or bearer, and transferable by delivery, without indorsement, any holder of such note could avail himself of the security afforded by a mortgage executed to secure its payment, because the mortgage, as an incident, would follow the note into the hands of every holder."); *Lawson v. Gibbs*, 591 S.W.2d 292, 294 (Tex.Civ.App.1979, writ ref'd n.r.e.) ("The mortgage of the property is an incident of the debt; and as long as the debt exists, the security will follow the debt.").

In a situation analogous to the present one, some courts have denied the assignee of a debt to a laborer the right to file a mechanics' lien when the debt goes unpaid. *See* Annotation, *Right of one other than contractor, laborer, or materialman to file mechanics' lien*, 83 A.L.R. 11 (1933). Such courts have often based their holding on the theory that the right to perfect a mechanics' lien is "personal" to the laborer or materialman, and is not a proper subject of an assignment. However, in *Southern Surety Co. v. First State Bank*, 54 S.W.2d 888 (Tex.Civ.App.1932, writ ref'd), the court rejected that argument, explaining its rationale as follows:

We are inclined to the view that the authorities supporting the theory that the assignee acquires the right to perfect and enforce the lien present the better

reasoning. The general policy of the law in creating the lien is to protect the laborer or materialman to the end that he may receive full compensation for the labor or material so furnished and which has gone into the construction of the road. To allow the assignee to perfect the lien does the debtor no harm. He owes the debt and the funds are held by him subject to the right to fix the lien. It is of no concern to him who fixes it. On the other hand, it is of material advantage to the laborer or materialman that he be allowed to collect his claim as quickly as possible and that he receive full value therefor. If he be denied the privilege of assigning his equitable right to fix the lien along with his debt, it will often result that he must either suffer the delay and expense incident to fixing the lien or else assign his claim at a discount and suffer the loss. He should be permitted to avail himself of the security which the statute gives him in the way most beneficial to himself, and, if he can better himself, without injury to the debtor, by giving his assignee the right to perfect the lien, he should be permitted to do so. [Citations omitted.] Under our blended system a very liberal policy is recognized in the assignment of both legal and equitable rights.

54 S.W.2d at 890. *See also Trane Co. v. Wortham*, 428 S.W.2d 417 (Tex.Civ.App.), writ ref'd n.r.e., 432 S.W.2d 520 (Tex.1968); *Martin–Glover Co. v. Mays*, 74 F.2d 104 (5th Cir.1934).

■ Mechanics' lien and payment bond statutes clearly have a similar, if not identical, purpose: to protect laborers and materialmen by providing a form of security to insure they are paid. Indeed, the Texas mechanics' lien statute itself contains a provision whereby the general contractor may "substitute" a bond in place of claimants' lien rights. *See* Tex.Prop.Code Ann. §§ 53.201–.211 (1984 & Supp.1991); *see also Fidelity & Deposit Co. v. Felker*, 469 S.W.2d 389, 390 (Tex.1971). We can conceive of no reason to treat bond claimants under the McGregor Act differently. Accordingly, the reasoning expressed in

*Southern Surety* is equally applicable to bond cases such as the present one. In addition, the McGregor Act expressly provides that bond claims may be assigned. *See* Tex.Rev.Civ.Stat.Ann. art. 5160(C)(d). We conclude that the assignee of a laborer's claim for wages is not prohibited from filing and pursuing a claim against a payment bond merely because the assignee did not personally furnish the labor or materials.

We have found only a handful of cases from other jurisdictions that have addressed the precise question presented here: whether the indorsee of a wage check from a laborer may, after the check is dishonored, recover on the contractor's payment bond. Recovery was allowed in *Finch v. Enke*, 54 S.D. 164, 222 N.W. 657 (1929), and *Shoshoni Lumber Co. v. Fidelity & Deposit Co.*, 46 Wyo. 241, 24 P.2d 690 (1933), and was disallowed in *National Market Co. v. Maryland Casualty Co.*, 100 Wash. 370, 174 P. 479 (1918), and *Miller v. New Amsterdam Casualty Co.*, 105 Ga. App. 174, 123 S.E.2d 717 (1961).

Although in *National Market* the Supreme Court of Washington concluded that the indorsee did not have the right to recover on the general contractor's payment bond, that ruling was based on its holding that, under Washington law, the mere indorsement and delivery of a check did not constitute an assignment of the indorser's underlying claim for wages. Significantly, however, the court acknowledged that a valid assignment of a laborer's claim for wages "operates as an equitable assignment of the laborer's right to assert his claim against the bond." *National Market*, 174 P. at 480. One of the cited cases had held:

> It is only by virtue of his right to receive his pay from the contractor that the laborer or materialman has any right assertable against the bond as a contract made for his benefit. His right against the bond is ancillary to and dependent upon his right against the contractors. The first right is dependent upon the second. An assignment of the second, therefore, operates as an equitable assignment of the first.

*Northwestern Nat'l Bank v. Guardian Casualty & Guaranty Co.*, 93 Wash. 635, 161 P. 473, 477 (1916). As discussed above, Texas law under the U.C.C. does recognize the indorsement of a check as an assignment of the underlying claim. Accordingly, *National Market* actually supports the conclusion that indorsement and delivery of these checks operated as an equitable assignment of the laborers' rights under the McGregor Act.

In the next case, *Finch v. Enke*, the Supreme Court of South Dakota was impressed by the common-sense view expressed by the *dissenting* opinion in *National Market:*

> "To my mind the problem simply reduces itself to this: What are the rights of the laborers as against the ... surety upon the bond, and does appellant stand in the shoes of the laborers?" In answering the foregoing question, [the dissenting opinion in *National Market*] said: "That the laborers, even after receiving their checks, retained all their rights as against the surety, of course, is plain, because the checks, until they should be actually paid, ... would not pay the laborers' claims. I think it follows that, when the laborers transferred their checks to appellant, it then stood in the shoes of the laborers as to all their rights against the contractor and the surety."

*Finch*, 222 N.W. at 659 (quoting *National Market*, 174 P. at 481 (Parker, J., dissenting)). The South Dakota court went on to conclude that "[w]hen appellants became indorsees of such checks, they became assignees of a valid, equitable assignment from the payees of such checks; this equitable assignment transferred to appellants the rights of the payees to have their claims paid, if need be, by respondent [the surety on the bond], who had guaranteed their payment." 222 N.W. at 659.

In *Shoshoni Lumber,* the Supreme Court of Wyoming reviewed the conflicting authorities, including *Southern Surety Co.,* that had addressed the analogous situation of the assignment of unperfected mechanics' liens and concluded that the "better

reason ... is attained by those decisions which declare that the right vested in a contractor, laborer, or materialman under the mechanics' lien laws, even though not perfected as a lien, is assignable, and passes with the claim, and that the assignee thereof may validly proceed to complete and enforce the lien." *Shoshoni Lumber*, 24 P.2d at 697. The court then distinguished *National Market*, aligned itself with *Finch* and the *National Market* dissent, and concluded that, "by indorsing these labor checks, the payees thereof intended to and did make an equitable assignment, to their indorsees, of the right the payees had to have the claims the checks represented paid by the surety, as it had agreed to do when the contractor's funds failed to meet them." 24 P.2d at 701.

Finally, in *Miller*, the Georgia Court of Appeals denied relief to an equitable assignee on procedural grounds. While acknowledging *Finch* and *Shoshoni Lumber*, the court held that under Georgia procedure a recovery in an equitable assignee's own name would "depend upon equitable principles and the exercise of equitable jurisdiction" beyond that of the city court in which the plaintiff had sought relief. *Miller*, 123 S.E.2d at 720. Therefore, we view *Miller* as distinguishable from the present case.

 We conclude that, on the dishonor of the laborers' wage checks, the stores not only became assignees of the laborers' underlying wage claims, but also became equitable assignees of the laborers' right to pursue payment from the general contractor's payment bond. Accordingly, the summary judgment in favor of the bonding company must be reversed. In addition, we have reviewed the summary judgment record and are convinced that the stores presented conclusive proof that they had met the statutory requirements to recover on the bond. The stores also presented, in the form of affidavits, adequate and uncontested proof that their reasonable attorney's fees were $3,858.75 through trial, plus $1,500.00 if appealed to the court of appeals, plus an additional $1,000.00 if appealed to the supreme court. We are,

therefore, obligated to render judgment in favor of the stores, which is the judgment that the trial court should have rendered. *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396 (1958).

The judgment of the trial court is reversed. We render judgment that the individual appellants recover the following amounts from appellees, jointly and severally: J.W.D., Inc.—$2,465.10; The Money Store, Inc.—$4,315.08; and Crestview Minimax Food Mart, Inc.—$4,796.09; each appellant shall recover prejudgment interest on the foregoing amounts at the rate of 10% per annum from the dates on which their respective bond claims were made to the date of this Court's judgment. Appellants, jointly, shall also recover the following from appellees, jointly and severally: attorney's fees in the amount of $5,358.75, plus an additional $1,000.00 attorney's fees if further appeal is taken to the supreme court; post-judgment interest on the entire judgment at the rate of 10% per annum from the date of this Court's judgment until paid; and all costs of court.