# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00429-CV

**Alvie Campbell and Julie Campbell, Appellants**

**v.**

**Mortgage Electronic Registration Systems, Inc., as Nominee for Lender and Lender's Successors and Assigns; Wells Fargo Bank, N.A.; Stephen C. Porter; David Seybold; Ryan Bourgeois; Matthew Cunningham, and John Doe 1-100, Appellees**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 10-1093-C368, HONORABLE BURT CARNES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Alvie Campbell and Julie Campbell appeal from the trial court's orders granting a no-evidence motion for summary judgment filed by Mortgage Electronic Registration Systems, Inc. ("MERS") and Wells Fargo Bank, N.A. and a motion to dismiss filed by Wells Fargo attorneys Stephen C. Porter, David Seybold, Ryan Bourgeois, and Matthew Cunningham (collectively "the Attorney Defendants"). We will affirm the trial court's orders.

### FACTUAL AND PROCEDURAL BACKGROUND

In order to purchase property located at 250 Private Road 947 in Williamson County, the Campbells borrowed $137,837 from American Mortgage Network, Inc. d/b/a AMNET Mortgage ("AMNET"). The loan is evidenced by a promissory note dated October 29, 2004 in the original principal amount of $137,837 payable to "Lender," which is defined as AMNET and its successors

and assigns. The note is secured by a deed of trust dated October 29, 2004, and recorded in the Official Public Records of Williamson County. The deed of trust secures repayment of the debt evidenced in the note, and for that purpose the Campbells granted and conveyed to the trustee, to hold in trust with power of sale, the property located at 250 Private Road 947. The beneficiary under the deed of trust is MERS, acting solely as a nominee for AMNET and its successors and assigns. The deed of trust states:

> [The Campbells] understand and agree that MERS holds only legal title to the interests granted by [the Campbells] in this Security Interest, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

The reverse side of the note's signature page includes an endorsement signed by AMNET stating: "pay to the order of Wells Fargo Bank, N.A. without recourse." The summary-judgment evidence included the affidavit of Kyle N. Campbell, Vice President of Loan Documentation for Wells Fargo Bank, who averred that

> Wells Fargo became the holder and servicer of the Note on December 9, 2004. Since that time, Wells Fargo has remained the holder and servicer of the Note. Wells Fargo is in physical possession of the original Note, which is endorsed to Wells Fargo. The endorsement appears on the back side of the Original Note's signature page.

In August 2008, MERS assigned its interest in the deed of trust to Wells Fargo. This assignment was recorded in the Official Public Records of Williamson County on September 30, 2008.

2

In July 2010, counsel for Wells Fargo gave the Campbells notice of its intent to foreclose on the property securing the note, and in September 2010 the substitute trustee sold the property at a non-judicial foreclosure sale. The Campbells then sued MERS, Wells Fargo, and the Attorney Defendants, asserting a cause of action for wrongful foreclosure. The Campbells alleged that Wells Fargo lacked authority to foreclose under the deed of trust because it was not the holder of the note and because the note and deed of trust had been "bifurcated." They contended this bifurcation "rendered the secured debt unsecured," causing it to be unenforceable and, as a consequence, "the power of sale clause contained within the nullified security interest" was also unenforceable. The Campbells sought monetary damages and requested that the court set aside the sale and enter an injunction prohibiting any action that would interfere with their possession and enjoyment of the property.

Wells Fargo and MERS filed traditional and no-evidence motions for summary judgment, and the Attorney Defendants filed a motion to dismiss. The trial court granted the no-evidence motion for summary judgment and the motion to dismiss, and this appeal followed. In two issues, the Campbells contend that the trial court erred in granting those motions.

## DISCUSSION

### Did the trial court err in granting the no-evidence motion for summary judgment?

We review the trial court's summary-judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party moving for summary judgment under rule 166a(i) must assert that, after adequate time for discovery, there is no evidence of one or more essential elements

3

of a claim or defense on which the adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *see Fort Worth Osteopathic Hosp. Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). To defeat a rule 166a(i) summary-judgment motion, the nonmovant must produce summary-judgment evidence raising a genuine issue of material fact. Tex. R. Civ. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.2d 598, 600 (Tex. 2004). A genuine issue of material fact exists if the nonmovant produces more than a scintilla of evidence establishing the existence of the challenged element. *Ford Motor Co.*, 135 S.W.3d at 600. More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.2d 754, 755 (Tex. 2007). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003) (quoting *Kindred v. Con/Chem. Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). Evidence that is so slight as to make any inference a guess is in legal effect no evidence. *Ford Motor Co.*, 135 S.W.3d at 601. If the nonmovant fails to produce more than a scintilla of evidence under that burden, there is no need to analyze whether the movant's proof satisfied the "traditional" summary-judgment burden under rule 166a(c). *Id.* at 600.

In their second issue, the Campbells contend that the trial court erred in granting the no-evidence motion for summary judgment because there were genuine issues of material fact as to whether Wells Fargo was the owner of a valid lien securing the property sold, as well as to whether the lien actually created a security interest in the property. They argue that their cause of action below was not one for wrongful foreclosure but instead was a complaint that Wells Fargo did not

4

have "the legal right to invoke the power of sale contained in an expired deed of trust much less not having been a proper agent for a note holder with rights to enforce" the note. In their petition, however, the Campbells alleged, under the caption "Count 1: Wrongful Foreclosure," that

> [the] foreclosure action was wrongful. The Deed of Trust is not enforceable due to that lack of ownership in the note by the Defendants and if such lawful owner of the indebtedness was to prove up a proper Note, bifurcation of the note and the security instrument has been proved by an assignment of the mortgage by an intrusive non-party that was not [a] "Holder in Due Course."

We understand the Campbells' claim in the court below to be that Wells Fargo and MERS lacked authority to foreclose on the property because (1) neither was the holder of the note, and (2) the deed of trust, by virtue of events transpiring after the note and deed of trust were executed, did not continue to create a security interest in the property. Therefore, in order to defeat the no-evidence motion for summary judgment, the Campbells were required to produce summary-judgment evidence creating a fact issue as to one of these stated bases for their allegation that the foreclosure was improper.

In their response to the no-evidence motion for summary judgment, the Campbells argued that Wells Fargo has not proven that it is the holder of the note. As an initial matter, we note that the Campbells, as plaintiffs alleging wrongful foreclosure, would have the burden of proof at trial to show that Wells Fargo was not the note's holder. *See Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.) ("To prevail in a wrongful foreclosure suit, a party must establish (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate

5

selling price."). In the context of a no-evidence motion for summary judgment, Wells Fargo was not required to present proof that it was the holder. Rather, the Campbells had the burden of proving this alleged defect in the foreclosure sale proceedings, i.e., that Wells Fargo was *not* the holder. To survive the no-evidence summary judgment motion, therefore, they were required to create a fact issue as to whether Wells Fargo was in fact the note's holder. They did not do so. The "evidence" attached to their response to the no-evidence motion consisted of (1) an order from a New Jersey proceeding involving unrelated parties; (2) an "exhibit" that consists of a composite of photocopies of portions of instruments purportedly related to this transaction, unsupported by any affidavit or attestation that would make it competent summary-judgment evidence; and (3) the affidavit of James McGuire, who averred that he overheard Mark Hopkins, counsel for the Attorney Defendants, tell a different trial judge in a different proceeding that a ruling in that proceeding could impact the outcome of the present case. None of this "evidence" created a fact issue as to whether Wells Fargo was the holder of the note.[1] The Campbells thus failed to produce any evidence creating a fact issue as to Wells Fargo's status as the note's holder.

We next consider whether the Campbells created a fact issue as to whether the deed of trust continued to create a valid security interest in the property. Again, it was the Campbells' burden to create a fact issue as to the invalidity of the security interest created by the deed of trust. While the Campbells did not produce any competent summary-judgment evidence in this regard,

---

[1] We observe that the uncontroverted summary-judgment evidence that Wells Fargo produced in connection with its traditional motion for summary judgment does establish conclusively that it was the holder of the note. This evidence included a copy of the note endorsed by AMNET to Wells Fargo proved up by the affidavit of Kyle N. Campbell, who averred that Wells Fargo became the note's holder in December 2004 and has since remained its holder and servicer.

6

they did point to evidence attached to Wells Fargo and MERS's traditional summary-judgment motion and argue that such evidence created a fact issue as to the validity of the deed of trust and Wells Fargo's right to foreclose on the property. Because the Campbells referenced this summary-judgment evidence in their response, the trial court could have considered it when ruling on the no-evidence motion for summary judgment. *See, e.g.*, *Dyer v. Accredited Home Lenders, Inc.*, No. 02-11-00046-CV, 2012 WL 335858, at *3 (Tex. App.—Fort Worth Feb. 2, 2012, no pet. h.) (mem. op.) (court required to ignore traditional summary-judgment evidence attached to combined summary judgment motion unless nonmovant directed trial court to that evidence in its response to no-evidence motion). In their response to Wells Fargo's no-evidence motion for summary judgment, the Campbells referred to the note, the deed of trust, and evidence of their assignments attached as evidence to Wells Fargo's traditional summary-judgment motion and asserted that, because the "transfer of the lien was not recorded into land records in Williamson County until almost four years after the alleged negotiation of the note . . . perfection was lost in the chain of title by not conforming to recordation laws of Texas." Presumably, the Campbells were referring to the fact that the note was transferred to Wells Fargo in December 2004, but the assignment of the deed of trust from MERS to Wells Fargo was not recorded in the Official Public Records of Williamson County until September 30, 2008. According to the Campbells, during the intervening time period the note and the deed of trust securing its payment became "bifurcated," and perfection of the security interest was lost, rendering its foreclosure provisions unenforceable. The Campbells' arguments do not create a fact issue as to whether there was a defect in the foreclosure proceedings. First, no "bifurcation" of the note and the deed of trust resulted from AMNET's assignment of the note to

Wells Fargo. When a mortgage note is transferred, the mortgage or deed of trust is also automatically transferred to the note holder by virtue of the common-law rule that "the mortgage follows the note." *J.W.D., Inc. v. Federal Ins. Co.*, 806 S.W.2d 327, 329-30 (Tex. App.—Austin 1991, no writ) (mortgage on real estate is said to "follow" promissory note it secures).[2] Therefore, when AMNET transferred the note to Wells Fargo, that transfer also served to transfer the deed of trust to Wells Fargo.

Second, perfection of the security interest was not lost due to the claimed "late" filing and recordation, as the Campbells appear to contend. The summary-judgment evidence shows that the deed of trust was filed and recorded in the Official Public Records of Williamson County on November 5, 2004, approximately one week after it was executed by the Campbells. Re-recordation was not required when the note was transferred to Wells Fargo in December of that year. MERS is a recognized "book entry system." *See* Tex. Prop. Code Ann. § 51.0001(1) (West 2007) ("book entry system" means national book entry system for registering beneficial interest in security interest that acts as nominee for grantee, beneficiary, owner, or holder of security instrument and its successors and assigns). The MERS system is an electronic mortgage registration and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans. *See In re Mortg. Elec. Registration Sys. (MERS) Litig.*, 659 F. Supp. 2d 1368, 1370 (J. P. M. L. 2009). When, as here, the

---

[2] In the context of personal property, this rule has been codified in section 9.203(g) of the business and commerce code. *See* Tex. Bus. & Com. Code Ann. § 9.203 cmt. 9 (West 2011) ("Subsection (g) codifies the common-law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security or lien."). The fact that the rule has not been similarly codified as to real property does not diminish the force of the common-law real-property rule.

8

deed of trust names MERS as the nominee for the lender and its successor and assigns and the deed of trust is recorded in the local real-property records with MERS as the named beneficiary, MERS remains the mortgagee of record if the note is transferred between MERS members, and there is no requirement that the deed of trust be re-recorded each time it is transferred. *See Knighton v. Merscorp, Inc.*, 300 F. App'x 285, 286 (5th Cir. 2008) ("MERS members pay a one-time and nominal fee for each registered mortgage. With MERS as the permanent record mortgagee, rights to the mortgage loan can be bought and sold without any changes to the public land records."). When the note was transferred from AMNET to Wells Fargo in December 2004, MERS became the nominee for Wells Fargo and, consequently, there was no requirement that the deed of trust be re-recorded.

To the extent the Campbells argue that the assignment of the deed of trust from MERS to Wells Fargo in August 2008 was invalid, or that the involvement of MERS in the transaction somehow rendered it ineffective to preserve Wells Fargo's right to foreclose on the property, these arguments also fail. The role of MERS was clearly established in the deed of trust:

> Borrower understands and agrees that MERS holds any legal title to the interests granted by Borrower in this Security Interest, but, if necessary to comply with the law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including but not limited to, releasing and canceling this Security Interest.

Under Texas law, where, as here, a deed of trust expressly grants MERS the power of sale, then MERS has that power. *Athey v. MERS*, 314 S.W.3d 161, 166 (Tex. App.—Eastland 2010, pet. denied). MERS was the nominee for AMNET and its successors and assigns, which includes Wells

9

Fargo. MERS had the authority to transfer the rights and interests in the deed of trust to Wells Fargo. When MERS transferred the deed of trust to Wells Fargo, Wells Fargo obtained all MERS's rights and interests in the deed of trust, including the power to foreclose on the property. As in *Athey*, the mortgage documents provide for the use of MERS, and those provisions are enforceable to the extent provided by the terms of the documents. MERS's actions in this transaction were consistent with both the note and the deed of trust. MERS's involvement in these foreclosure proceedings does not render them defective. The Campbells have failed to raise a genuine issue of material fact regarding Wells Fargo's non-judicial foreclosure on the property.

With regard to MERS, the no-evidence summary judgment was proper because there was no evidence that MERS participated in the foreclosure sale. Rather, it had already assigned the deed of trust to Wells Fargo, and the foreclosure sale was conducted by Wells Fargo. We overrule the Campbells' second issue.

### Did the trial court err in granting the Attorney Defendants' motion to dismiss?

In their petition, the Campbells did not allege a separate cause of action against the Attorney Defendants, but instead appeared to base their claim for damages on the Attorney Defendants' participation in what the Campbells asserted was a wrongful foreclosure. The Attorney Defendants filed a motion to dismiss based on attorney immunity from suit with regard to claims against them. The trial court granted the Attorney Defendants' motion to dismiss.

An attorney enjoys "qualified immunity," with respect to non-clients, for actions taken in connection with representing a client in litigation. *See, e.g.*, *Butler v. Lilly*, 533 S.W.2d 130, 131-34 (Tex. Civ. App.—Houston [1st Dist.] 1976, writ dism'd). This qualified immunity generally

10

applies even if conduct is improper in the context of the underlying lawsuit. *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex. App.—Fort Worth 1997, writ denied) ("Under Texas law, attorneys cannot be held liable for wrongful litigation conduct."). An attorney's conduct, even if frivolous or without merit, while potentially sanctionable by the court, is not independently actionable if the conduct is part of the discharge of the lawyer's duties in representing his client. *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 441 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Bradt v. West*, 892 S.W.2d 56, 71-74 (Tex. App.—Houston [1st Dist.] 1994, writ denied). A lawyer's protection from liability arising out of his representation of a client is not, however, without limits. *See McCamish, Martin, Brown & Loeffler v. Appling Interests*, 991 S.W.2d 787, 792 (Tex. 1999). For example, a cause of action could exist against an attorney who knowingly commits a fraudulent act outside the scope of his legal representation of his client. *See Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ). If a lawyer participates in independently fraudulent activities, his action is "foreign to the duties of an attorney." *Id.* Thus, a lawyer cannot shield his own fraudulent actions from liability simply on the ground that he is an agent of his client. *Id.*

In their motion to dismiss, the Attorney Defendants asserted that they were immune from suit because they could not be sued by the Campbells for actions taken within the scope of their representation of Wells Fargo. The Attorney Defendants were retained by Wells Fargo to assist in the foreclosure of the property located at 250 Private Road 947. Attached to the motion to dismiss was the affidavit of Stephen Porter, who averred that the Attorney Defendants had no contact with the Campbells that was not in their capacity as "legal counsel for Wells Fargo in an adverse

11

relationship with Alvie Campbell and Julie Campbell." The Campbells did not controvert the Porter affidavit, nor did they produce evidence or allege that the Attorney Defendants had any contact or communication with them that was not in their capacity as counsel for Wells Fargo assisting with the foreclosure proceedings. Neither the Campbells' petition nor their response to the motion to dismiss alleged that the Attorney Defendants committed any wrongful acts outside of the foreclosure proceedings. Moreover, we have already concluded above that the foreclosure proceedings were not defective in any discernable way. We hold, therefore, that the trial court did not err in dismissing the Campbells' claims against the Attorney Defendants. *See Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 408 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (affirming trial court's dismissal of claims against attorney on ground that because of attorney's immunity from suit, plaintiff failed to allege claim or plead cause of action for which relief could be granted). We overrule the Campbells' first appellate issue.

## CONCLUSION

Having overruled the Campbells' two appellate issues, we affirm the trial court's order granting Wells Fargo and MERS's no-evidence motion for summary judgment and its order dismissing the Campbells' claim against the Attorney Defendants.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   May 18, 2012