

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-10-00227-CV

KAREN ROBESON                                                    APPELLANT

V.

MORTGAGE ELECTRONIC                                             APPELLEES
REGISTRATION SYSTEMS, INC.
AND MIDFIRST BANK

----------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

----------

**MEMORANDUM OPINION**[1]

----------

This is an appeal from a take-nothing summary judgment in favor of appellees Mortgage Electronic Registration Systems, Inc. and MidFirst Bank. In two points, appellant Karen Robeson contends that the trial court erred by granting summary judgment and by failing to allow additional discovery before granting summary judgment. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

**Background**

Robeson sued appellees for breach of contract, negligence, wrongful foreclosure, violations of the DTPA, and violations of the Texas Debt Collection Act (TDCA) in connection with a home mortgage transaction. Specifically, she alleged that before foreclosing on her home, (1) appellees failed to provide proper notice of acceleration and the substitute trustee's sale because MidFirst did not yet own the note and deed of trust when it gave notice of acceleration and foreclosure, (2) the foreclosure sale was void because appellees did not obtain ownership of the note and deed of trust until after the required notices of acceleration and foreclosure were sent, (3) appellees failed to comply with sections 51.002(b) and (d) and 51.0025(2) of the Texas Property Code, and (4) appellees failed to comply with sections 392.301(a)(8) and 392.304(a)(8) of the Texas finance code.

Appellees moved for both a no-evidence and traditional summary judgment. The trial court granted a summary judgment without specifying whether on traditional or no-evidence grounds or both. The trial court also denied Robeson's "request to delay the hearing."

**Standards of Review**

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the

nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 131 S. Ct. 1017 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their

3

conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

### Summary Judgment Evidence

As summary judgment evidence, appellees presented the affidavit of a vice president with MidFirst. That evidence shows that Robeson executed a note on November 6, 2007 promising to repay the lender, Alethes, LLC, monthly installments in consideration of a house loan. The note bears endorsements from Alethes to GMAC Bank and from GMAC Bank to GMAC Mortgage, LLC; it also contains a blank endorsement from GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation. Also attached to the affidavit is a deed of trust securing the debt to Alethes, with MERS as the beneficiary as nominee for Alethes and its successors and assigns, and a recorded assignment dated February 20, 2009 of the deed of trust from MERS as nominee for Alethes to MidFirst. Included in the attachment are three letters from GMAC Mortgage to Robeson dated February,

4

May, and October 2008 indicating that Robeson was in default under the loan. The affidavit also states, "Defendant's authorized agent or predecessor in interest sent Plaintiff the required notice of default via United States Postal Service, certified mail, postage prepaid to Plaintiff at the Property address and, if applicable, their last known mailing address. The default was not cured prior to the foreclosure of the Property."

Appellees further provided an affidavit from an employee of the attorney hired by MidFirst's loan servicer to initiate foreclosure proceedings indicating that notice of acceleration and of the substitute trustee's sale were mailed on January 8, 2009, at least twenty-one days in advance of the April 7, 2009 sale. Copies of the letter and notice are attached. The letter begins, "This law firm represents MIDLAND MORTGAGE CO., the Mortgage Servicer, in its mortgage banking activities in the State of Texas. . . . MIDLAND MORTGAGE CO. is acting as the Mortgage Servicer for MIDFIRST BANK, who is the Mortgagee of the Note and Deed of Trust associated with the above referenced loan." The letter also states,

> The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code § 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

Also attached are the following: a January 2, 2009 letter from Midland to Robeson indicating that she was no longer eligible for any loan modification programs because she indicated that she was no longer interested in any such

5

programs and that she wanted retention instead and a January 5, 2009 letter from Midland to Robeson telling her the loan had been referred to an attorney to begin foreclosure. The evidence also includes a substitute trustee's deed indicating that MidFirst bought the secured property at the foreclosure sale.

Robeson did not attach any evidence to her response. She argued that the motion for summary judgment was premature because

> [d]iscovery is necessary to confirm the lack of Defendants' defenses in this case and a matter at the heart of the case for both sides–whether or not Defendant Mid[F]irst had standing to pursue and complete a substitute trustee's sale of the Plaintiff's property at the time it threatened foreclosure, whether Mid[F]irst in fact has standing now to pursue any defenses, all at issue in the pleadings.

Robeson contended that she needed time to discover whether MidFirst was acting wrongfully when it sent notices of acceleration and foreclosure because it did not have standing under the note or deed of trust at that time. Robeson also wanted time to propound discovery regarding her possible damages under the TDCA and DTPA. Robeson contended specifically that the assignment dated February 20, 2009 was too late to support the January 8, 2009 notice of acceleration and the undated notice of the sale. She also contended that there was no evidence that MidFirst was the owner or holder of the note because there was no evidence of an endorsement to MidFirst.

In their response, appellees noted that the case had been pending for ten months and that Robeson had failed to conduct any discovery during that time. The discovery period was set to end a little over a month after appellees filed

6

their response, and Robeson still had not propounded any discovery. Appellees also contended that proof of ownership of the note is not an element of a wrongful foreclosure cause of action. Attached to their response is an affidavit from another vice president of MidFirst indicating that he was personally familiar with Robeson's loan and stating that the note and deed of trust were transferred to MidFirst on October 1, 2008 and that Midland began servicing the loan on December 2, 2008. Thus, appellees contended that the execution and recording of the assignment was a mere formality and that MidFirst had the authority to send the January 2009 notice of acceleration and the notice of substitute trustee's sale.

## Analysis—Adequate Time for Discovery

We review a trial court's determination that there has been an adequate time for discovery on a case-by-case basis under an abuse of discretion standard, bearing in mind that a trial court abuses its discretion only when it acts in an unreasonable and arbitrary manner or when it acts without reference to any guiding rules or principles. *LaRue v. Chief Oil & Gas, LLC*, 167 S.W.3d 866, 873 (Tex. App.—Fort Worth 2005, no pet.); *see Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).[2]

---

[2]The same standard of review applies to claims of a lack of adequate discovery before a trial court grants a traditional summary judgment. *Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 696 (Tex. App.—Dallas 2008, no pet.).

7

A court of appeals may not reverse a trial court's ruling under this standard merely because it disagrees with the decision. *Downer*, 701 S.W.2d at 242.

In considering whether the trial court permitted an adequate time for discovery, we consider the following factors: (1) the nature of the case, (2) the nature of the evidence necessary to controvert the no-evidence motion, (3) the length of time the case was active, (4) the amount of time the no-evidence motion was on file, (5) whether the movant had requested stricter deadlines for discovery, (6) the amount of discovery that already had taken place, and (7) whether the discovery deadlines in place were specific or vague. *Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 467 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

The evidence shows that the suit had been pending for seven and a half months when appellees filed their motion for summary judgment on November 24, 2009. Robeson does not dispute that she had failed to propound any discovery at that time. Even as of February 16, 2010, the date appellees replied to Robeson's response to their motion, Robeson had not propounded any discovery. Trial was set for April 19, 2010. Robeson did not provide the trial court any explanation other than that she needed additional time to investigate appellees' "defenses." Moreover, Robeson failed to file an affidavit or verified motion for continuance explaining the need for further discovery.[3] *See* Tex. R.

---

[3]Although Robeson requested additional time for discovery in her response to appellees' motion for summary judgment, the response was not verified and,

8

Civ. P. 166a(g); *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *Jaimes v. Fiesta Mart, Inc*., 21 S.W.3d 301, 304 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). In light of how long the case had been pending and Robeson's failure as plaintiff to propound any discovery at all, we conclude and hold that the trial court did not abuse its discretion by determining that an adequate time for discovery had elapsed.

We overrule Robeson's second point.

## Analysis—Merits of Summary Judgment

Robeson's main complaint in her petition is that MidFirst did not have the capacity to send her letters accelerating the debt and noticing foreclosure because it did not own the note and deed of trust until February 20, 2009, the date of the assignment.

Although MidFirst did not produce evidence that the note contained a special endorsement to it from GMAC, it was not required to do so. An instrument containing a blank endorsement is payable to the bearer and may be negotiated by transfer of possession alone. Tex. Bus. & Comm. Code Ann. § 3.205 (West 2002). The original of the note need not be produced as summary judgment evidence of possession. *See Alexander v. Wells Fargo Bank, N.A.,* No. 02-10-00005-CV, 2011 WL 1331519, at *3 (Tex. App.—Fort Worth Apr. 7, 2011, pet. denied) (mem. op.); *Cannon v. Tex. Indep. Bank*, 1 S.W.3d 218, 224–

---

thus, cannot serve as a verified motion for continuance. *See, e.g*., Tex. R. Civ. P. 251, 252.

25 (Tex. App.—Texarkana 1999, pet. denied); *see also Bittinger v. Wells Fargo Bank, N.A.*, No. H-10-1745, 2011 WL 3568206, at *4 (S.D. Tex. Aug. 15, 2011) (mem. op. and order).[4]

The two MidFirst vice presidents averred in their affidavits that MidFirst was the owner and holder of the note and deed of trust; the second vice president confirmed that the date MidFirst became the owner and holder of the note and deed of trust was in October 2008, well before the January notices were sent. In that same affidavit, the vice president states that Midland became the servicer for MidFirst in December 2008. Because this evidence was uncontroverted, it was all that was required for appellees to prove their ownership of the note for foreclosure purposes. *See Cannon,* 1 S.W.3d at 224–25; *First Gibraltar Bank FSB v. Farley*, 895 S.W.2d 425, 428 (Tex. App.—San Antonio 1995, writ denied); *Christian v. Univ. Fed. Sav.*, 792 S.W.2d 533, 534 (Tex. App.—Houston [1st Dist.] 1990, no writ).

Robeson argues in her brief that the date of the assignment document from MERS to MidFirst raises a fact issue as to whether MidFirst had the capacity to authorize Midland to send the required notices in January 2009. To

[4]Although federal authority is not controlling for this court, it is particularly persuasive in this type of case, as much home mortgage litigation in Texas is being tried in the federal courts. *See, e.g., Wigginton v. Bank of N.Y. Mellon*, No. 3:10-CV-2128-G, 2011 WL 2669071, at *3 (N.D. Tex. July 7, 2011) (mem. op. and order); *Wells v. BAC Home Loans Servicing, L.P.*, W-10-CA-00350, 2011 WL 2163987, at *3 (W.D. Tex. April 26, 2011) (order) (both citing numerous federal cases applying Texas law).

understand why this is not so, it is necessary to understand the nature of the MERS registration system.

MERS was created for the purpose of tracking ownership interests in residential mortgages. *Mtg. Elec. Reg. Sys. v. Young*, No. 02-08-00088-CV, 2009 WL 1564994, at *4 (Tex. App.—Fort Worth June 4, 2009, no pet.) (mem. op.). Entities such as mortgage lenders subscribe to MERS and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. *Id*. These members contractually agree to appoint MERS to act as their common agent on all mortgages they register in MERS. *Id*. When a mortgage is executed through a MERS member and registered in MERS, it is recorded in the real property records with MERS named on the instrument as nominee or mortgagee of record. *Id*. While the mortgage is in effect, the original lender may transfer the beneficial ownership or servicing rights on the mortgage to another MERS member, with MERS tracking these electronic transfers; these assignments are not recorded in the real property records. *Id*. If a MERS member assigns its interest in a mortgage to a nonmember, this assignment is recorded in the real property records, and MERS deactivates the loan within its system. *Id*. Thus, through MERS, interests in notes and liens can be transferred between members without assignment documents having to be recorded each

time.[5]  *See id.*  Here, the deed of trust describes MERS as being the beneficiary "as nominee for" Alethes as well as its "successors and assigns."

Thus, the date of the assignment from MERS to MidFirst is not evidence of the actual date that MidFirst became entitled to authorize enforcement of the lender's rights in the deed of trust by virtue of the transfer of ownership of the lender's interest in the note and deed of trust,[6] nor does it raise a fact issue as to the actual date GMAC's interests in the note and deed of trust were transferred to MidFirst.[7]  In fact, even MERS, "as nominee for [Alethes] . . . and [its]

---

[5]As a federal court has described,

> The MERS system is merely an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans.  The system is designed to track transfers and avoid recording and other transfer fees that are otherwise associated with the sale. MERS is defined in Texas Property Code § 51.0001(1) as a "book entry system. . . ."

*Richardson v. CitiMortgage, Inc.*, No. 6:10cv119, 2010 WL 4818556, at \*5 (E.D. Tex. Nov. 22, 2010) (mem. op. and order) (citations omitted).  "Book entry system" is defined as "a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns."  Tex. Prop. Code Ann. § 51.0001(1) (West Supp. 2011).  A book entry system such as MERS is included within the definition of "mortgagee" under Texas law.  *Id.* § 51.0001(4).

[6]A mortgage typically follows the note it secures.  *Gilbreath v. White*, 903 S.W.2d 851, 854 (Tex. App.—Texarkana 1995, no writ); *J.W.D., Inc. v. Federal Ins. Co.,* 806 S.W.2d 327, 329–30 (Tex. App.—Austin 1991, no writ); *Lawson v. Gibbs,* 591 S.W.2d 292, 294 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.).

[7]We have previously held that an assignment of deed of trust from MERS to the lender dated effective two years after the actual date of transfer of

12

successors and assigns," was authorized under the deed of trust "to exercise any or all of these interests" in the deed of trust, which includes a power of sale.

The February 20, 2009 assignment was of MERS's interest in the deed of trust as beneficiary. But the deed of trust gives the lender as well as the beneficiary the right to invoke the power of sale. So the assignment of MERS's status as beneficiary under the deed of trust on February 20, 2009 does not contradict MidFirst's evidence that it succeeded to the rights of the lender under the deed of trust on October 1, 2008.[8]

Accordingly, we conclude and hold that the trial court did not err by granting summary judgment on Robeson's breach of contract and negligence claims, which are based entirely on her argument that MidFirst lacked the capacity to enforce the terms of the note and deed of trust, as well as the parts of her TDCA, DTPA, and wrongful foreclosure claims that are based on the same argument. *See, e.g., Life Ins. Co. of Va. v. Gar-Dal, Inc*., 570 S.W.2d 378, 380 (Tex. 1978); *see also* Tex. Fin. Code Ann. § 392.301(a)(8) (West 2006).

The remainder of Robeson's TDCA, DTPA, and wrongful foreclosure claims relate primarily to whether MidFirst provided proper notice of foreclosure

---

ownership of the loan did not raise a fact issue as to whether the assignment was "fabricated." *Hornbuckle v. Countrywide Home Loans, Inc*., No. 02-09-00330-CV, 2011 WL 1901975, at *4 (Tex. App.—Fort Worth May 19, 2011, no pet.) (mem. op.).

[8]Moreover, we note that Robeson never challenged Midland's right as a servicer to initiate foreclosure proceedings. *See* Tex. Prop. Code Ann. §§ 51.0001(4), 51.0025 (West Supp. 2011).

13

under section 51.002(b) and (d) and section 51.0025(2) of the property code. Section 51.002(b) requires that the notice of foreclosure sale (1) must provide the earliest time at which the sale will begin, (2) must be given at least twenty-one days before the sale, (3) must be posted "at the courthouse door of each county in which the property is located" and "in the office of the county clerk of each county in which the property is located," and (4) must be served on the debtor in writing by certified mail. Tex. Prop. Code Ann. § 51.002(b) (West Supp. 2011).

The notice Midland sent to Robeson on MidFirst's behalf identified the date of sale as April 7, 2009 and the earliest start time as 10:00 a.m. Appellees presented prima facie affidavit evidence that the notice was mailed to Robeson at her last known mailing address according to MidFirst's records on January 8, 2009, at least twenty-one days before the sale. *See* Tex. Prop. Code Ann. § 51.002(e); *Sauceda v. GMAC Mtg. Corp.*, 268 S.W.3d 135, 139–40 (Tex. App.––Corpus Christi 2008, no pet.). Additionally, the affidavit attached to the notice of substitute trustee's sale stated that "Notice of Trustee's Sale was filed with the County Clerk in the county or counties in which the subject property is situated and copies thereof posted at said courthouse(s) as required by law and in the manner specified by ordinance and custom." Moreover, Robeson did not controvert any of this evidence. And although appellees did not provide a copy of a notice of default, Robeson did not present any evidence that they failed to send one, nor did she controvert, or object to, their affidavit testimony that such a notice was sent. Therefore, even if appellees did not prove that they sent all

14

required notices as a matter of law, they were nevertheless entitled to a no-evidence summary judgment on that issue. Accordingly, we conclude and hold that appellees were entitled to summary judgment on Robeson's claims that the notice of foreclosure sale did not comply with section 51.002. *See Frost Nat'l Bank*, 315 S.W.3d at 508; *Stanley v. CitiFinancial Mtg. Co.*, 121 S.W.3d 811, 817–18 (Tex. App.—Beaumont 2003, pet. denied).

Section 51.0025(2) provides that a mortgage servicer may administer a foreclosure sale if "the notices required under Section 51.002(b) disclose that the mortgage servicer is representing the mortgagee under a servicing agreement with the mortgagee[,] . . . the name of the mortgagee[,] and . . . the address of the mortgagee . . . or . . . the address of the mortgage servicer." Tex. Prop. Code Ann. § 51.0025(2). The notice included in appellees' summary judgment evidence states that Midland was representing MidFirst in accordance with a servicing agreement and provides MidFirst's address. Accordingly, appellees proved their entitlement to summary judgment as a matter of law on Robeson's claims based on an alleged failure to comply with section 51.0025(2). *See Frost Nat'l Bank*, 315 S.W.3d at 508.

Robeson's only remaining allegation is that appellees are liable under section 392.304(a)(8) of the finance code for "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." Tex. Fin. Code Ann. § 392.304(a)(8) (West 2006). However, Robeson produced no evidence raising a

genuine issue of material fact on this allegation.  Accordingly, we conclude and hold that appellees were entitled to a no-evidence summary judgment on that claim.  *See* Tex. R. Civ. P. 166a(i); *Timpte Indus.*, 286 S.W.3d at 310.  Having concluded that appellees were entitled to a traditional motion for summary judgment as to most of their claims and a no-evidence summary judgment as to the remainder, we overrule Robeson's first point.

## Conclusion

Having overruled both of Robeson's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

GARDNER, J., dissents; opinion to follow.

DELIVERED:  January 5, 2012

16



**NO. 02-10-00227-CV**

KAREN ROBESON          APPELLANT

V.

MORTGAGE ELECTRONIC          APPELLEES
REGISTRATION SYSTEMS, INC.
AND MIDFIRST BANK

----------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

----------

## DISSENTING MEMORANDUM OPINION[9]

----------

I agree with the majority that the main issue in this case is whether MidFirst had acquired the capacity as mortgagee to initiate nonjudicial foreclosure proceedings before it sent Ms. Robeson the letters of January 5 and January 8, 2009, accelerating the debt and noticing the trustee's sale. But I respectfully disagree with the majority's ultimate conclusion and instead believe that a genuine issue of material fact exists as to when MidFirst acquired that

[9]*See* Tex. R. App. P. 47.4.

17

capacity because of the obvious conflict in MidFirst's own summary judgment evidence.

The assignment of the note and deed of trust from MERS (as nominee for Alethes, LLC, the original mortgagee) to MidFirst, a copy of which was attached to the affidavit of MidFirst Vice President Melissa Poage, states that it was executed on February 20, 2009, and filed in the county records on March 4, 2009. But the affidavit of MidFirst Vice President Thad Burr states that the note and deed of trust were "transferred" to MidFirst on October 1, 2008. I do not see how the majority concludes that the date of execution of the assignment to MidFirst of the note and deed of trust somehow is "not evidence of the actual date" that MidFirst became authorized to initiate foreclosure under the deed of trust, but the statement in the affidavit of Thad Burr as to a date some four months earlier upon which there was a "transfer," whatever that means, is "uncontroverted" evidence. Majority op. at 5.

It is important to clarify that the affidavits of those two vice presidents were not filed at the same time as part of the supporting evidence for MidFirst's motion for summary judgment, although they are addressed together in the majority opinion. Majority op. at 5. To the contrary, the Melissa Poage affidavit, with its attached documents including the February 20, 2009 assignment to MidFirst, which was, in turn, attached to the motion for summary judgment, was initially relied upon by MidFirst as the sole basis for its authority to initiate foreclosure proceedings and to sell Ms. Robeson's property at the trustee's sale on April 7,

2009.  Ms. Robeson's response pointed out and brought home to both MidFirst and the trial court that the letters initiating foreclosure, dated January 5 and 8, 2009, were sent more than a month and a half prior to the February 20 assignment of the note and deed of trust to MidFirst.  It was only after receiving the Robeson response that Midfirst's later affidavit was then prepared and attached to and filed with MidFirst's reply to Ms. Robeson's response to the motion for summary judgment, for the first time stating that the note and deed of trust were actually "transferred to MidFirst on October 1, 2008," and that Midland Mortgage Co. had begun servicing the loan on December 2, 2008, prior to any letter demands or notices from MidFirst to Ms. Robeson.

I would hold that Ms. Robeson was entitled to rely on MidFirst's own affidavits and documents filed in support of MidFirst's hybrid traditional and no-evidence motion for summary judgment and that MidFirst's own summary judgment evidence raised a genuine issue of material fact as to when it had authority to initiate foreclosure, thus precluding summary judgment on the claim for violations of the Texas Debt Collection Practices Act.  *See* Tex. Fin. Code Ann. § 392.301(a)(8) (West 2006); *Biggers v. BAC Home Loans Serv'g,* LP, 767 F. Supp. 2d 725, 730 (N.D. Tex. 2011).

ANNE GARDNER<br>JUSTICE

DELIVERED:  May 22, 2012

19