ACCEPTED
03-14-00315-CV
6941457
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/15/2015 5:41:02 PM
JEFFREY D. KYLE
CLERK

# CAUSE NO. 03-14-00315-CV

# IN THE THIRD COURT OF APPEALS
# AUSTIN, TEXAS

FILED
September 15, 2015

Third Court of Appeals
Jeffrey D. Kyle
Clerk

**JADON NEWMAN**
**Appellant**

**v.**

**FIRSTMARK CREDIT UNION**
**Appellee**

## MOTION FOR REHEARING

Respectfully submitted,

Craig S. Smith
SBN 18553570
14493 S.P.I.D., suite A, P.M.B. 240
Corpus Christi, Tx. 78418
361 728 8037
csslawrr@gmail.com

**ORAL ARGUMENT REQUESTED**

TO THE HONORABLE THIRD COURT OF APPEALS:

COMES NOW JADON NEWMAN, respectfully showing the Court as follows:

Newman respectfully disagrees and objects to this Honorable Court's decision. The Court erred by finding Firstmark conclusively proved all elements of its claim on the Guarantee.

This Court erred by affirming summary judgment on a theory that was not presented below. This Court writes disclaimer language buried in a sentence fragment in Paragraph 12 in this form Guaranty conclusively barred Newman's fraud claims or his defense of equitable estoppel. Firstmark did not raise this issue in its motion for summary judgment in the trial court. App. 1 (Firstmark's First Amended Motion for Summary Judgment). Paragraphs 13-16 and 20-22 of its motion stated a very different argument. Furthermore, this Court failed to quote all of Paragraph 12 in its opinion. App. 2 (Guaranty). Paragraph 12 does not clearly shown the parties intended to disclaim fraud claims or it is ambiguous.

This Honorable Court should have remanded, and Newman so moves the Court.


I.      Firstmark did not conclusively prove its right to judgment. The parties' entire agreement was not attached to the summary judgment motion. Newman's affidavit specifically states the specific portion of the agreement Firstmark did not attach "radically changed the deal."


This Court correctly states all the parties' writings must be considered. The Court then reviews the Promissory Note, Commercial Loan Agreement, and Assignment of Note.

This Court writes: "In the fall of 2009, Firstmark revised the checklist and began requiring NCFM to assign to it the borrowers' first lien deeds of trust." Evidence shows this is when Firstmark demanded that NCFM sign a new document entitled "Assignment of Liens." Newman testified this radically changed the deal.

This Court must remand because Firstmark did not include the Assignment of Liens in its traditional summary judgment proof. This document is essential proof for Firstmark. As this Court states, all writing must be reviewed to determine the parties' agreements. This Assignment of Liens is part of the parties' agreement. Firstmark cannot conclusively prove all material terms of the parties' agreement without it. As discussed below, these form agreements are not totally one sided. For example, Paragraph 9C of the Guaranty reserved Newman's claims against Firstmark where, as alleged here, it did not act "reasonably and in good faith."

This Court writes other language in the parties agreement allowed Firstmark to act or not act in specific ways concerning assigning liens, and concludes Newman loses. This reasoning is too much of a stretch on this record because the Court does not know all terms of the parties' agreement. This is a traditional summary judgment. Firstmark had the burden to conclusively prove its right to judgment. It did not. Therefore this Court must remand.

II.     This Court errs by affirming summary judgment on a ground not raised below.

This Court affirms on the theory that disclaimer language buried in Paragraph 12 of the Guaranty negates Newman's fraud claims. Firstmark did not raise this issue in the trial court. App. 1; CR 75-87.

Firstmark raised different issues in Paragraphs 13-16 and 20-22 of its first amended motion for summary judgment. It relied on contractual waivers in Paragraph 9 of the Guaranty and statute of frauds defense. Tex. Bus. & Rems Code Ann. §26.02(c). These arguments are very different from the disclaimer theory identified in this Court's holding.

This is a traditional summary judgment. Firstmark is required to expressly raise all grounds it is relying upon in its motion. Firstmark did not raise this ground in its motion.

Therefore, it cannot prevail on this ground here.  This Court should remand Newman's fraud

counter-claim.  Although not expressly mentioned in this Honorable Court's short opinion,

Newman is assuming the same reasoning might negate his defense of equitable estoppel.  If so,

that would be a significant holding and this Honorable Court should at least say that.


III.     This Court erred by holding a sentence fragment with disclaimer language conclusively
         negates all fraud claims or equitable estoppel defenses Newman could assert.

         Newman alleged Firstmark misrepresented its experience with warehouse lending, and he

relied on this misrepresentation.  This Court holds Newman disclaimed all fraud claims.  This

Court writes: "To be enforceable, a contractual disclaimer of reliance must contain language that

is clear and unequivocal."  This Court wrote the following language from the Guaranty bars all

fraud claims by Newman:

> [Newman] further represent[s] and warrant[s] that [Newman has] not relied on any
> representations or omissions from [Firstmark] or any information provided by [Firstmark]
> respecting the Borrower, the Borrower's financial condition and existing indebtedness, the
> Borrower's authority to borrow, or the Borrower's use and intended use of all Debt
> proceeds.

The entire paragraph provides:

> 12.     WARRANTIES AND REPRESENTATIONS.  I have the right and authority to
> enter into this Guaranty.  The execution and delivery of this Guaranty will not
> violate any agreement governing me or to which I am a party.
> In addition, I represent and warrant that this Guaranty was entered into at the
> request of the Borrower, and that I am satisfied regarding the Borrowers financial
> condition and existing indebtedness, authority to borrow and the use and intended
> use of all Debt proceeds.  I further represent and warrant that I have not relied on
> any representations or omissions from you or any information provided by you
> respecting the Borrower, the Borrower's financial condition and existing
> indebtedness, the Borrower's authority to borrow, or the Borrower's use and
> intended use of all Debt proceeds.

App. 2.

This language is in a form agreement provided by Firstmark. Language quoted by the Court is in the middle of a paragraph in the middle of this form. The operative language relied upon by this Court is a sentence fragment ("I further represent and warrant that I have not relied on any representations or omissions from you . . . "). The rest of the sentence specifies what information Newman agrees he is not relying upon. All this information concerns the borrower.

The entire sentence concerns Firstmark's representations respecting one issue: the Borrower. It can be broken down into three clauses, A, B, and C, as follows:

A.    I further represent and warrant that I have not relied on

B.    any representations or omissions from you or any information provided by you

C.    respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow, or the Borrower's use and intended use of all Debt proceeds.

A reasonable jury could find clause C applies to all three components of B, representations, omissions, or information. At most the parties agreed Newman has not relied upon specified representations, omissions, or information respecting the borrower. It says nothing about whether Newman relied on intentional misrepresentations concerning Firstmark's experience as a warehouse lender. This interpretation is greatly strengthened by the fact that this paragraph concerns the Borrower, who is mentioned seven times. A reasonable jury could accept this meaning. Therefore Newman is entitled to a jury trial because summary judgment evidence shows the misrepresentations of which he complains concern Firstmark's experience as a warehouse lender, not the Borrower.

A reasonable jury could also decide if the parties really intended to bar Newman's fraud claim or his equitable estoppel defense they would have used language clearly and

unambiguously saying just that. Such language would logically appear with all the other waivers in Paragraph 9 of the Guaranty entitled "WAIVER AND CONSENT." A review of Paragraph 9 shows the opposite. Subsection C of Paragraph 9 provides:

> C.     Waiver of Claims. I waive all claims for loss or damage caused by your acts of omissions where you acted reasonably and in good faith.

This language reserved Newman's claims for fraud because fraud is an intentional or reckless claim for loss or damage. This specific language controls, not the ambiguous boilerplate quoted by this Court. At the very least this language is ambiguous. Therefore, this Court must remand.

This Court's short opinion does great damage to the jurisprudence of this State. Before this decision, our Courts focused on the truth about what happened before and after documents were signed. If a party deceived to induce someone to sign a piece of paper, the agreement would be vitiated. *Italian Cowboy Partners Ltd. v. Prudential Insurance*, 341 S.W.3d 323 (Tex. 2011). This advanced the truth-seeking function of our court system, protected reasonable expectations, deterred overly sharp dealings, and most importantly, ensured the efficient allocation of economic resources. According to this Court, once Newman signed this piece of paper he had no rights and the truth didn't matter. This holding conflicts with Texas law and must be reconsidered this Fall.

This case is important, and this Court should order oral argument.

PRAYER

Newman moves the Court to reconsider its opinion and judgment. This Court should remand this case for trial on all issues or other issues as the court specifies.

Respectfully submitted,

/s/ Craig S. Smith
Craig S. Smith
SBN 18553570
14493 S.P.I.D., suite A, P.M.B. 240
Corpus Christi, Tx. 78418
361 728 8037
csslawrr@gmail.com

## CERTIFICATE OF SERVICE AND COMPLIANCE

I certify that on September 15, 2015, I served a copy of Appellant's Motion for Rehearing upon Firstmark's Counsel by email. I also certify the number of relevant words is 1467, according to my computer.

/s/ Craig S. Smith
Craig S. Smith

Filed
13 October 24 P2:22
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-13-000808

CAUSE NO. D-1-GN-13-000808

| | | |
|---|---|---|
| FIRSTMARK CREDIT UNION, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| JADON F. NEWMAN, | § | |
| Defendant. | § | 353RD JUDICIAL DISTRICT |

**PLAINTIFF'S FIRST AMENDED MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF THIS COURT:

Firstmark Credit Union ("<u>Plaintiff</u>") files this First Amended Motion for Summary Judgment in accordance with the provisions of Rule 166a of the Texas Rules of Civil Procedure, seeking full and final judgment in favor of Plaintiff on Plaintiff's entire cause of action against Defendant Jadon F. Newman ("<u>Defendant</u>"). In support of this motion, Plaintiff would respectfully show the Court as follows:

**OVERVIEW**

1. Plaintiff has sued Defendant under his guaranty agreement to recover over $3.3 million owed to Plaintiff by NCFM, LLC, a bankrupt entity controlled by Defendant at the time of the loan. Plaintiff has provided summary judgment evidence sufficient to establish its entitlement to recover the money owed as a matter of law.

2. Defendant, in a desperate attempt to postpone or avoid liability, has raised a multitude of groundless defenses and counterclaims, most based upon alleged (and disputed) oral agreements and representations, some unaccompanied by any factual allegations at all. The loan documents at issue contain disclaimers of oral agreements, which comply with §26.02, TEX. BUS. & COM. CODE; claims and defenses based on oral agreements and representations are

therefore barred. In addition, Defendant waived many defenses and claims under his guaranty. Furthermore, the anti-deficiency statute is inapplicable to Defendant, his claims based upon fraud and negligent misrepresentation are barred by limitations, and he is not entitled to declaratory relief or to an accounting for the reasons stated below. Therefore all of Defendant's claims and defenses are barred as a matter of law.

## PLAINTIFF IS ENTITLED TO JUDGMENT ON ALL OF ITS CLAIMS

3.      Plaintiff is entitled to judgment as a matter of law in that there is no genuine issue as to any material fact necessary to establish the liability of Defendant for Plaintiff's claims against him as follows:

(a)      the amount due under a Promissory Note dated September 9, 2008 in the original principal amount of FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) ("Note"), guaranteed by Defendant under his Guaranty Agreement dated September 9, 2008 ("Guaranty").

(b)      reasonable and necessary attorneys' fees and expenses;

(c)      prejudgment and post-judgment interest at the rate of 18% per annum until paid; and

(d)      costs of Court.

## PLAINTIFF IS ALSO ENTITLED TO JUDGMENT ON ALL COUNTERCLAIMS

4.      Defendant has filed groundless counterclaims for fraudulent inducement, fraud, negligent misrepresentation and declaratory judgment alleging release. All of these claims are barred as a matter of law by the Texas Statute of Frauds, §26.02, TEX. BUS. & COM. CODE, because Defendant executed a Disclaimer of Oral Agreements. In addition, all of the relevant loan documents contain disclaimers of oral agreements. Furthermore, Defendant waived claims under his Guaranty, the anti-deficiency statute is inapplicable to Defendant, his claims based

2

upon fraud and negligent misrepresentation are barred by limitations, and he is not entitled to declaratory relief or to an accounting for the reasons stated below.

## THE SUMMARY JUDGMENT EVIDENCE SUPPORTS PLAINTIFF'S CLAIMS

5. In support of this motion, Plaintiff relies upon the pleadings on file in this case and the summary judgment evidence, including the attached Amended Affidavit of Gregg Thorne ("Thorne Affidavit") and its attached and incorporated exhibits, the attached Affidavit of Sylvia Miller and its attached and incorporated exhibit ("Miller Affidavit"), the attached Affidavit of Timothy N. Tuggey (the "Tuggey Affidavit"), and the attached and incorporated Affidavit of Lessie G. Fitzpatrick ("Fitzpatrick Affidavit"), all of which are incorporated herein by reference and which show that there is no genuine issue as to any material fact necessary to establish Defendant's liability for the amounts owed to Plaintiff under the Note and Guaranty.

6. The attached and incorporated exhibits are as follows:

Exhibit 1:  Promissory Note signed by Defendant Jadon F. Newman on behalf of NCFM, LLC to Firstmark Credit Union dated September 9, 2008 in the original principal amount of $5,000,000.00

Exhibit 2: Guaranty dated September 9, 2008 by Defendant Jadon F. Newman personally of all indebtedness of NCFM, LLC to Firstmark Credit Union

Exhibit 3:  Firstmark Credit Union Detail of Expenditures for Noble Capital Property

Exhibit 4:  Borrower Statement of Account

Exhibit 5: Commercial Loan Agreement signed by Defendant Jadon F. Newman on behalf of NCFM, LLC and Firstmark Credit Union dated September 9, 2008 regarding the promissory note attached as Exhibit 1

Exhibit 6:  Assignment of Note dated September 9, 2008 signed by Defendant Jadon F. Newman on behalf of NCFM, LLC securing the promissory note attached as Exhibit 1

Exhibit 7: Disclaimer of Oral Agreements executed by NCFM, LLC as Borrower, Defendant Jadon F. Newman as Guarantor and Firstmark Credit Union as Lender regarding the

loan dated September 9, 2008 in the amount of $5,000,000.00 evidenced by the promissory note attached as Exhibit 1

Exhibit 8: Rule 11 Agreement signed by counsel for Plaintiff and Defendant

7.     As evidenced by the Thorne Affidavit and its attached and incorporated exhibits, the Defendant has defaulted on his obligations to pay the indebtedness owing under the Note and Guaranty.

8.     As evidenced by the Thorne Affidavit and its attached and incorporated exhibits, Plaintiff is the owner and holder of the Note.

9.     As evidenced by the Thorne Affidavit and the Miller Affidavit and their exhibits, after all lawful payments, credits and offsets have been allowed, Defendant Jadon F. Newman is indebted to Plaintiff under his Guaranty of the Note as of May 1, 2013, in the principal amount of $748,964.55, together with accrued interest in the amount of $2,013,797.86, late fees in the amount of $100,932.60, attorneys' fees and expenses in the amount of $477,608.42, appraisal fees in the amount of $14,300.00, accounting fees in the amount of $24,307.00, and a fee paid to the Chapter 11 Trustee of NCFM, LLC for bankruptcy administration in the amount of $9,867.77, for a total of $3,389,778.20.

10.     As evidenced by the Thorne Affidavit, Plaintiff was required to retain the undersigned attorneys because of Defendant's default and because Defendant has failed and refused to pay the amounts owed.

11.     Plaintiff is entitled to judgment against Defendant as a matter of law for its reasonable attorneys' fees and expenses under the terms of the Note, Guaranty, and Sections 38.001 *et seq.*, Texas Civil Practice & Remedies Code, and there is no genuine issue of material fact as to Plaintiff's entitlement to such fees and expenses or as to the amount thereof, as

4

evidenced by the Tuggey Affidavit. As evidenced by the Tuggey Affidavit, THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($35,000.00) would be a reasonable fee in the State of Texas to be granted in this case for attorneys' fees and expenses, including post-judgment collection, if summary judgment is granted, no motion for reconsideration or for a new trial is filed and no appeal is taken from the judgment. If a motion for reconsideration or for a new trial is filed, a reasonable fee for the legal services required would be TWO THOUSAND AND NO/100 DOLLARS ($2,000.00). If an appeal is made to the Texas Court of Appeals, a reasonable fee for legal services required in responding to that appeal would be FORTY THOUSAND AND NO/100 DOLLARS ($40,000.00). If a petition for review is made to the Texas Supreme Court, a reasonable fee for legal services required would be THIRTY THOUSAND AND NO/100 DOLLARS ($30,000.00). If a petition for review is granted by the Texas Supreme Court, a reasonable fee for the legal services required would be THIRTY THOUSAND AND NO/100 DOLLARS ($30,000.00).

12. As evidenced by the Thorne Affidavit and Exhibit 1, Plaintiff is entitled to interest on all amounts owed at the rate of 18 per cent per annum.

## DEFENDANT HAS PLED NO VALID DEFENSES TO PLAINTIFF'S CLAIMS

### The defenses are barred by the Statute of Frauds

13. Defendant has alleged in Defendant Jadon F. Newman's First Amended Answer and Counterclaim (the "Amended Answer"), without any valid basis in law or in fact, that Plaintiff's claims "are barred by the affirmative defenses of waiver and release, modification of obligation, payment, equitable estoppel, quasi-estoppel, failure of consideration, fraud, failure to mitigate, discharge, accord and satisfaction, impairment of subrogation, impairment of collateral, and voidable contract." Every one of these defenses relies upon varying the terms of the loan

5

documents at issue in this case, which Defendant is precluded from doing under the Texas Statute of Frauds, §26.02, TEX. BUS. & COM. CODE.

14.    Exhibit 7 (the Disclaimer of Oral Agreements signed by Defendant both individually and as manager of the borrower, NCFM, LLC) states that it is incorporated into all of the loan documents and that "the entire agreement made between the Parties is contained within the executed documents…and…no agreements or promises exist between the Parties that are not reflected in the language of the various documents executed in conjunction with this transaction." The Disclaimer also says in bold type outlined by a box:

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND, TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**
**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

15.    The Texas Statute of Frauds, §26.02, TEX. BUS. & COM. CODE, provides that with respect to a loan in excess of $50,000, such as the one at issue in this case, "the rights and obligations of the parties…shall be determined solely from the written loan agreement, and any prior oral agreements between the parties are superseded by and merged into the loan agreement." §26.02(c). Furthermore, the statute provides that a loan agreement involving over $50,000 "may not be varied by any oral agreements or discussions that occur before or contemporaneously with the execution of the agreement." The statute requires that loan agreements provide notice of the statutory provisions in language identical to that used in the Disclaimer and that such language be boldface, capitalized, underlined or otherwise made conspicuous, as was true in this case. §26.02(e). The language required by §26.02(e) also appears conspicuously in the Note (Exhibit 1) and the Guaranty (Exhibit 2).

6

16.     Plaintiff complied fully with §26.02, TEX. BUS. & COM. CODE, and therefore Defendant's defenses are barred by it.

### The loan agreement was not altered or modified by Plaintiff

17.     Defendant complains about alleged changes in the underlying loan terms, but he cannot show that the loan agreement or terms were modified in any respect. All of the requirements imposed by Firstmark of which he complains were consistent with the terms of the loan documents. Defendant complains that NCFM was required to assign deed of trust liens to Plaintiff, but that was entirely consistent with the loan documents and with assigning the notes that were secured by those liens.

18.     The Assignment of Note (Exhibit 6) contemplates that the collateral includes "all obligations that support the payment or disposition of the" notes and "any rights or claims arising from the" notes, and the liens are inseparable from the notes that they secure. The assignment of a note also transfers a deed of trust lien securing the note. *Moore v. Raymond*, 15 Tex. 554, 556 (Tex. 1855); *De Bruhl v. Maas*, 54 Tex. 464, 470 (Tex. 1881). "[U]nder Texas law, the ability to foreclose on a deed of trust is transferred when the note is transferred...." *Bittinger v. Wells Fargo Bank NA*, 744 F.Supp.2d 619, 625 (S.D. Tex. 2010). "The assignment of a debt ordinarily carries with it all liens and every remedy or security that is incidental to the subject matter of the assignment and that could have been used, or made available, by the assignor as a means of indemnity or payment...." *J.W.D., Inc. v. Fed. Ins. Co.*, 806 S.W.2d 327, 329 (Tex. App.--Austin 1991, no pet.) [internal citations omitted]. "The mortgage of the property is an incident of the debt; and as long as the debt exists, the security will follow the debt." *Lawson v. Gibbs*, 591 S.W.2d 292, 294 (Tex. Civ. App.—Houston [14th] 1979) [internal citations omitted] (in the context of a collaterally transferred note).

7

19. Defendant quotes selectively from <u>Exhibit A</u> to the Commercial Loan Agreement (the checklist of items required for a draw request) and fails to mention that it included assignments of lien on existing notes receivable, so this requirement could hardly have been a surprise. <u>Exhibit A to Exhibit 5</u>. In addition, there is nothing in <u>Exhibit A</u> or in the Commercial Loan Agreement that suggests that NCFM, LLC would not be required to provide additional documentation. On the contrary, the Commercial Loan Agreement signed by Defendant on behalf of NCFM, LLC provides that NCFM, LLC will sign, deliver and file any additional documents that Firstmark considers necessary to perfect, continue, and preserve NCFM, LLC's obligations and to confirm Firstmark's lien status. <u>Exhibit 5</u>, Section 14. Assignments of lien clearly fall into this category.

20. In essence, Defendant is complaining that Firstmark began enforcing some terms of the loan documents that it did not initially enforce, and the loan documents make clear that even if this were true, this would not have been a waiver of Firstmark's rights to enforce those terms later. *See,* for example, <u>Exhibit 2</u>, sections 9.B and 10.G and <u>Exhibit 5</u>, Section 8.G.

### Defendant waived defenses in his Guaranty

21. The Guaranty is absolute and unconditional (<u>Exhibit 2</u>, section 2). It contains both broad and specific waivers of virtually every defense that might otherwise be available to a guarantor (<u>Exhibit 2</u>, sections 2, 3, 4, 5, 7, 9.A, 9.C), as well as a provision that Firstmark does not waive any of its rights, remedies, privileges or rights to insist upon strict performance of the loan documents unless the waiver is in writing and signed by Firstmark (<u>Exhibit 2</u>, section 9.B; *see also* section 10.G). The defense of waiver is therefore expressly barred by the Guaranty.

22. The Guaranty provides that Defendant's obligation to pay "shall not be affected by the illegality, invalidity or unenforceability of any…circumstances which make the

8

indebtedness unenforceable against the Borrower" (Exhibit 2, section 4). It also provides that any collateral securing the debt may be "assigned, exchanged, released…or substituted…without defeating, discharging or diminishing [Defendant's] liability" and that "any act or omission by [Firstmark] which impairs the [collateral] will not relieve" Defendant of his liability (Exhibit 2, section 7). It also states that Firstmark may "release, substitute or impair any" collateral (Exhibit 2, section 9.A(3)). Under the Guaranty, Defendant waived "any right of subrogation." (Exhibit 2, section 9.A(9). He also waived "all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith." (Exhibit 2, section 9.B).

23. For all of the foregoing reasons, the defenses raised by Defendant are barred as a matter of law.

**TEX. PROP. CODE §51.003 does not apply to this case and has been waived**

24. Defendant has alleged that Firstmark did not foreclose on the notes securing the indebtedness at issue (the "Collateral Notes") or the real properties securing the Collateral Notes for fair market value and requests a determination of fair market value, citing Texas' anti-deficiency statute, TEX. PROP. CODE §51.003, although Defendant requests no relief related to this determination. In any event, §51.003 does not apply to this case. As acknowledged in Defendant's Amended Answer in paragraph 5, and as shown in the loan documents, particularly the Note (Exhibit 1, paragraph 10) and the Assignment of Note (Exhibit 6), the collateral for the loan at issue was promissory notes, not real estate.

25. By its terms, §51.003 expressly applies only to "indebtedness secured by… real property" and to deficiencies sought after foreclosure on the real property. §51.003(a). The right to request a determination of fair market value is only made available to persons against whom "such a recovery" (i.e., a post-real estate foreclosure deficiency) is sought. §51.003(b).

9

Defendant has cited no authority, and Plaintiff knows of none, authorizing a party sued for a deficiency following foreclosure of promissory notes to challenge whether they were foreclosed for fair market value or to seek a determination of their value under §51.003.

26.     In addition, Defendant specifically waived reliance on any anti-deficiency statutes under his Guaranty, <u>Exhibit 2</u>, section 9.A(9). Therefore, Defendant is not entitled to relief under §51.003.

## DEFENDANT'S COUNTERCLAIMS ARE BARRED AS A MATTER OF LAW

### The counterclaims are barred by the Statute of Frauds and Guaranty waivers

27.     Defendant has alleged counterclaims for fraudulent inducement, fraud by nondisclosure and negligent misrepresentation and for a declaration under the Declaratory Judgments Act, Chapter 37, TEX. CIV. PRAC. & REM. CODE ("<u>Act</u>") based upon the alleged release of his Guaranty and for attorneys' fees under the Act. All of these claims are barred by the Statute of Frauds for the same reasons stated in paragraphs 13, 14 and 15 above, and by the waivers contained in the Guaranty for the same reasons stated in paragraphs 20, 21 and 22 above, all of which are incorporated by reference herein. Because Plaintiff has complied fully with the Statute of Frauds and because of the waivers in the Guaranty, all of Defendant's counterclaims are barred as a matter of law.

### Defendant has no right to relief under the Declaratory Judgments Act

28.     Defendant counterclaims under the Act are inappropriate because the release claim is merely a restatement of Defendant's affirmative defense of release. See *Staff Indus., Inc. v. Hallmark Contracting, Inc.*, 846 S.W.2d 542, 547-48 (Tex. App.—Corpus Christi 1993, no writ). The Act is "not available to settle disputes already pending before a court." *BHP Petroleum Co. Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990). A "declaration of non-

10

liability...is not normally a function of the declaratory judgment statute...." *Id.* Because Defendant's declaratory claim adds nothing to the disputes already pending and seeks a declaration of non-liability for Plaintiff's claims, it is improper and barred as a matter of law.

## The counterclaims are barred by limitations

29.     Defendant complains of alleged conduct by Plaintiff that occurred prior to and between September 2008 and September 2009. Amended Answer, ¶¶ 2, 4, 5, 6 and 8.   Plaintiff requests that the Court take judicial notice that the Amended Answer containing the counterclaims was filed on October 18, 2103. The statute of limitations applicable to fraud is 4 years. §16.004(a)(4), TEX. CIV. PRAC. & REM. CODE. The statute of limitations applicable to negligent misrepresentation is 2 years. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998). §16.003, TEX. CIV. PRAC. & REM. CODE.   Defendant's counterclaims for fraudulent inducement, fraud by nondisclosure and negligent misrepresentation are therefore barred by limitations.

## Defendant has no right to an accounting

30.     While Defendant claims entitlement to an Accounting, the basis for this claim is that he alleges that the "exact nature and extent of what was sold, for how much it sold, and how the proceeds were applied is unknown to Newman and cannot be determined without an accounting of the transactions" and that there is no adequate remedy at law for him to determine the actual amount owing.  In reality, this information is available through discovery and in fact, has already been provided to Defendant voluntarily and in great detail by Plaintiff pursuant to a Rule 11 Agreement. Fitzpatrick Affidavit; Exhibit 8. When a party can obtain adequate relief at law through the use of standard discovery procedures, an accounting is not required. *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717-18 (Tex. App.—

11

Houston [14th Dist.] 2002, pet. den.). There is no need for an accounting and Defendant cannot establish his entitlement to one.

**RELIEF REQUESTED**

31. Pursuant to Rule 166a(e), Texas Rules of Civil Procedure, Plaintiff requests that if the Court does not fully adjudicate this case on Plaintiff's First Amended Motion for Summary Judgment, and a trial or further hearing is necessary, that the Court at the hearing on the Motion ascertain what material facts are actually and in good faith controverted, grant a partial summary judgment as to the facts that appear to be without substantial controversy, and direct that a hearing on any controverted matters be set following the hearing on Plaintiff's First Amended Motion for Summary Judgment. Alternatively, Plaintiff requests that any controverted issues be severed and that a final judgment be entered immediately as to matters that are held to be established as a matter of law.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that this matter be set for hearing according to the provisions of Rule 166a of the Texas Rules of Civil Procedure, and that this Court grant summary judgment against Defendant as follows, reserving Plaintiff's rights to seek other relief for Defendant's fraud:

(1) for the total amount owing under the Note as of May 1, 2013 in the amount of $3,389,778.20;

(2) for reasonable and necessary attorneys' fees and expenses in the amount of THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($35,000.00), additional attorneys' fees in the event of a motion for reconsideration or for a new trial in the amount of TWO THOUSAND AND NO/100 DOLLARS ($2,000.00), additional attorneys' fees in the event of an appeal to the Court of Appeals in the amount of FORTY THOUSAND AND NO/100

86

DOLLARS ($40,000.00), additional attorneys' fees in the event a petition for review is made to the Texas Supreme Court in the amount of THIRTY THOUSAND AND NO/100 DOLLARS ($30,000.00), additional attorneys' in the event the petition for review is granted by the Texas Supreme Court in the amount of THIRTY THOUSAND AND NO/100 DOLLARS ($30,000.00);

(3)    for prejudgment interest on the principal amount at the rate of 18% per annum from May 1, 2013 until date of judgment;

(4)    for post-judgment interest on all of the foregoing amounts at the rate of 18% per annum until paid;

(5)    for costs of Court;

(6)    that Defendant take nothing on his counterclaims;

(7)    in the alternative, for a partial summary judgment; and

(8)    for such other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**FRITZ, BYRNE, HEAD & HARRISON, PLLC**
98 San Jacinto Boulevard, Suite 2000
Austin, Texas 78701-4288
Telephone: (512) 476-2020
Telecopier: (512) 477-5267

By: /s/Lessie G. Fitzpatrick
        Lessie G. Fitzpatrick
        State Bar No. 24012630
        Lisa C. Fancher
        State Bar No. 06800275

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff's First Amended Motion for Summary Judgment is being served by hand delivery upon:

Stephen W. Lemmon
Ms. Rhonda Mates
Brown McCarroll, L.L.P.
111 Congress Avenue, Suite 1400
Austin, Texas 78701
**Attorneys for Defendant**

on this 24th day of October, 2013.

/s/ Lisa C. Fancher
Lisa C. Fancher

# GUARANTY
## (Continuing Debt - Unlimited)

**DATE AND PARTIES.** The date of this Guaranty is September 9, 2008. The parties and their addresses are:

**LENDER:**
FIRSTMARK CREDIT UNION
2023 Gold Canyon
San Antonio, TX 78232

**BORROWER:**
NCFM, LLC
a Texas Limited Liability Company
9414 Anderson Mill Road, Suite 100
Austin, TX 78729

**GUARANTOR:**
JADON F. NEWMAN
17727 Road Park Road
Jonestown, TX 78645

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

A. **Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

B. **Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

C. **Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with the Borrower from time to time, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law; that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, dated September 9, 2008, from NCFM, LLC (Borrower) to you, in the amount of $5,000,000.00.

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person

Jadon F. Newman

EXHIBIT 2

who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorsor or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or ~~written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my~~ obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

A. **Payments.** I fail to make a payment in full when due.

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorsor, surety or guarantor of this Guaranty or any Debt.

C. **Death or Incompetency.** I die or am declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

E. **Other Documents.** A default occurs under the terms of any other document relating to the Debt.

F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** I fail to satisfy or appeal any judgment against me.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

K. **Property Transfer.** I transfer all or a substantial part of my money or property.

L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

M. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

**9. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. **Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorsor, guarantor, surety, accommodation maker or any other co-signor.

Jadon F. Newman

(3) You may release, substitute or impair any Property.

(4) You, or any Institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of Borrower, a person or an entity that is a co-partner with Borrower, an entity in which Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt Instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. Waiver of Claims. I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

10. REMEDIES. After the Borrower or I default, you may at your option do any one or more of the following.

A. Acceleration. You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

B. Sources. You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

C. Insurance Benefits. You may make a claim for any and all insurance benefits or refunds that may be available on default.

D. Payments Made on the Borrower's Behalf. Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

E. Termination. You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. Set-Off. You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

In addition, you may also have rights under a "statutory lien". A "statutory lien" means your right under state or federal law to establish a right in, or claim to, my shares and dividends to the extent of any outstanding financial obligations that I have with you. If you have a statutory lien, you may without further notice, impress and enforce the statutory lien on my shares and dividends to the extent of any sums due and payable under the terms of this Guaranty that I fail to satisfy.

Your set-off and statutory lien rights do not apply to an account or other obligation where my rights arise only in a representative capacity. They also do not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check or share draft when the dishonor occurs because you set-off against any of my accounts, or exercised your statutory lien rights. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off or statutory lien rights.

Jaidon F. Newman

**G. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**12. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

**13. RELIANCE.** I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and I have signed this Guaranty to induce you to extend such credit. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from any loans and financial accommodations resulting in the creation of indebtedness guarantied hereby. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

**14. APPLICABLE LAW.** This Guaranty is governed by the laws of Texas, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. ASSIGNMENT.** If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**20. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Guaranty and any other document relating to the Debt, and proposed loans or extensions of credit that relate to this Guaranty. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

Jadon F. Newman

You and I must consent to arbitrate any Dispute concerning the Debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing the Debt underlying any Dispute before, during or after any arbitration. You may also enforce the Debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Guaranty, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Guaranty or another writing.

> THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND, TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.
> THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

21. SIGNATURES. By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

Jadon F. Newman, Individually

LENDER:

Firstmark Credit Union

By